Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL IX**

| | | |
|---|---|---|
| Miguel Santos Vélez<br><br>Recurrente<br><br>vs.<br><br>Departamento de Corrección y Rehabilitación<br><br>Recurrida | KLRA202300330 | **Revisión Administrativa** procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: B705-35579<br><br>Sobre: Evaluación de Custodia / Traslado |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Ronda del Toro y la Jueza Díaz Rivera.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de julio de 2023.

Comparece ante nos, el Sr. Miguel Santos Vélez (señor Santos Vélez o parte recurrente), quien presenta recurso de revisión administrativa en el que solicita la revocación de la "Resolución" notificada el 13 de abril de 2023, por el Comité de Clasificación y Tratamiento (CCT o parte recurrida). Mediante dicha determinación, el CCT acordó en reclasificar a la parte recurrente a custodia mediana, y solicitar su traslado a otra institución correccional.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, confirmamos el recurso mediante los fundamentos que expondremos a continuación.

**I.**

El 13 de abril de 2023, el CCT se reunió con el propósito de evaluar el Plan Institucional del señor Santos Vélez. En igual fecha, emitió "Resolución" mediante la cual realizó las siguientes

determinaciones de hecho, las cuales hacemos formar parte del presente dictamen:

*1. El confinado de referencia ingresó sumariado al sistema correccional el 19 de octubre del 2008.*

*2. Fue sentenciado el 9 de septiembre de 2009 a cumplir 38 años de prisión por asesinato en segundo grado varios casos de armas y amenaza a testigos.*

*3. Fue clasificado inicialmente en custodia máxima el 30 de septiembre 2009.*

*4. El 6 de octubre 2009 se le torna la muestra de ADN conforme a la Ley 175.*

*5. El 27 de septiembre 2012 se reclasifica en custodia mediana.*

*6. El 11 de diciembre 2012 se le radica querella administrativa por posesión de celular. El 18 de abril 2013 resultó incurso en la misma.*

*7. El 1ero de mayo de 2013 fue sentenciado a cumplir 6 meses de prisión adicionales, por el delito de posesión de celulares en prisión y fue reclasificado a recibo y traspaso de bienes objeto de delito.*

*8. Fue reclasificado en custodia máxima nuevamente el 30 de septiembre 2013 al recibirse un nuevo Auto de Prisión Provisional.*

*9. El 27 de agosto 2014 es reclasificado en custodia mediana.*

*10. El 4 de diciembre 2014 completó las terapias grupales del NRT.*

*11. El 21 mayo 2015 la compañera Sra. M. Sánchez, que tenía anotada, reportó que hubo un incidente durante la visita en la que fue amenazada con una navaja, solicito ser borrada del expediente.*

*12. El 13 de agosto de 2018 se recibe llamada de una amiga con quien mantenía una relación para informar que la amenazaba y la chantajeaba. La llamaba a través de celulares diferentes. Fue referida a La Policía.*

*13. Le someten cargos por maltrato y amenaza de la Ley 54 y le imponen fianza. El 5 de septiembre 2019 le desestiman los cargos criminales, pero queda vigente la Orden de Protección a favor de otra pareja, Sra. S. Declet Guevara.*

*14. Su custodia es reclasificada en máxima nuevamente el 1ero de octubre 2019. Estando en custodia máxima le radican querella administrativa por posesión de artículos que afectan la seguridad.*

*15. Se reclasifica en mediana el 28 de octubre 2020.*

*16. Se reclasifica en custodia mínima el 25 de octubre 2021.*

*17. Se asigna a rendir labores en el ornato y las áreas verdes del complejo de Bayamón el 24 de junio 2022.*

*18. El 14 de marzo 2022 es dado de baja por ausentismo.*

*19. El pasado 7 de marzo 2023 nos llama la novia del confinado Sra. N. Nieves para solicitar ser borrada del expediente pues terminó la relación y el confinado está amenazando con tirotearla a ella y a sus hijos. Fue referida a la Policía de Puerto Rico.*

*20. Se reciben informes de la Maestra Ramos y el Sargento Maldonado por incidente surgido en el salón de clases el 16 de marzo de 2023. En esa ocasión el confinado hizo unas manifestaciones intimidantes y amenazantes contra la civil y compartió con otros confinados información de la marca y modelo del vehículo personal de la maestra.*

Tras examinar la totalidad del expediente, el CCT determinó reclasificar al señor Santos Vélez a custodia mediana, y a solicitar su traslado a otra institución correccional. Lo anterior, por entender que, al incurrir en un patrón de conducta de violencia de género, intimidación y amenaza, la parte recurrente representa un riesgo a la seguridad del personal y sobre el clima institucional.

Inconforme, el 25 de abril de 2023, el señor Santos Vélez presentó una solicitud de reconsideración y, en esencia, solicitó ser clasificado en custodia mínima, ya que no hubo razón alguna para que fuese reclasificado a custodia mediana. Sostiene que, nunca cometió los asuntos que se le imputan, ya que no se le denunció o querelló por éstos.

Evaluada su petición, el 11 de mayo de 2023,[1] el Supervisor de la Oficina de Clasificación de Confinados no acogió la solicitud de reconsideración presentada por la parte recurrente. Razonó que, la conducta del señor Santos Vélez no avalaba su estancia en un nivel de mínima supervisión, sino que, demostraba que era un confinado de difícil manejo que representa amenaza o peligro.

---

[1] Notificada el 13 de junio de 2023.

Aún insatisfecho, el señor Santos Vélez recurre ante este foro apelativo intermedio, y solicita se revoque la determinación del CCT, se le reclasifique a custodia mínima, y sea trasladado a Bayamón o Arecibo.

**II.**

**-A-**

La Constitución de Puerto Rico, en la Sección 19 del Art. VI, establece como política pública referente al sistema correccional que, el Estado habrá de: "...reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". A esos efectos, se adoptó el Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, 3 LPRA, Ap. XVIII, según enmendado, el cual creó el Departamento de Corrección y Rehabilitación con el fin de tener un sistema integrado de seguridad y administración correccional enfocado en la custodia y la rehabilitación.

Entre las numerosas facultades, funciones y deberes del Secretario del Departamento se encuentra el "supervisar el cumplimiento de las condiciones de libertad provisional que les fueron impuestas a las personas bajo su jurisdicción e informar con premura a los tribunales y a cualquier otro funcionario pertinente de cualquier incumplimiento de dichas condiciones". Véase 3 LPRA, Ap. XVIII, Art. 7. Además, otorga al Secretario la facultad para adoptar, establecer, enmendar, revocar e implementar aquellos reglamentos que sean necesarios para cumplir con los fines del Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, *supra.*

En virtud de esta facultad, el Departamento de Corrección y Rehabilitación adoptó el "Manual para la Clasificación de los Confinados" de 22 de enero de 2020, Reglamento Núm. 9151, con

el propósito de clasificar a los confinados. Este procedimiento "consiste en la separación sistemática y evolutiva de estos en subgrupos, en virtud de las necesidades de cada individuo, y las exigencias y necesidades de la sociedad, desde la fecha de ingreso del confinado hasta la fecha de su excarcelación". Véase Introducción del Reglamento Núm. 9151, *supra*. El propósito del sistema de clasificación es ayudar a los confinados en su readaptación y posible reintegración a la sociedad. *Íd.*

Existen cuatro niveles reconocidos de custodia, a saber: (1) máxima, (2) mediana, (3) mínima, y (4) mínima / comunidad. Véase, Glosario de Términos del Reglamento Núm. 9151, *supra*. En lo pertinente, se encuentran bajo custodia mediana aquellos confinados "que requieren un grado intermedio de supervisión". *Íd.* Por su parte, son elegibles para custodia mínima los confinados que requieren "un mínimo de supervisión". *Íd.* La entidad facultada para determinar el nivel de custodia de un confinado es el Comité de Clasificación y Tratamiento de la institución, el cual tiene la función básica de "evaluar a los confinados sentenciados en lo que respecta a sus necesidades, aptitudes, intereses, limitaciones y funcionamiento social". Sección 2 del Reglamento Núm. 9151, *supra*.

Dicho esto, es posible reclasificar a un confinado de un nivel a otro distinto. Por ejemplo, un confinado que estaba bajo custodia mínima puede ser posteriormente reclasificado a custodia mediana. Así, "se revisará el nivel actual de custodia de cada confinado con el fin de determinar cuán apropiada es la asignación de custodia actual". Sección 7 del Reglamento Núm. 9151, *supra*. Hay dos tipos de reclasificación, a saber: (1) revisiones de rutina y (2) revisiones automáticas no rutinarias. *Íd.* Podrán llevarse a cabo revisiones automáticas no rutinarias en distintas situaciones, entre estas, cuando el confinado "[p]resenta un **patrón de**

**conducta negativa repetitiva**, ha incurrido en tres o más informes de indisciplina en el término de un (1) año o menos, **no cumple con el plan institucional trazado** a pesar de haber sido debidamente orientado". *Íd.* (Énfasis nuestro).

De acuerdo con el Formulario de Reclasificación de Custodia Escala de Reclasificación de Custodia (Casos Sentenciados) e instrucciones,[2] "[l]a reclasificación de custodia es similar a la evaluación inicial de custodia, pero da mayor énfasis a la conducta institucional para reflejar la verdadera conducta del confinado mientras está encarcelado". El nivel de custodia dependerá de la puntuación que resulte de la escala de reclasificación, siendo custodia mínima 5 puntos o menos, y custodia mediana entre 6 a 10 puntos en los renglones 1-8. *Íd.* No obstante lo anterior, hay ciertos factores que pueden considerarse para, de manera discrecional, modificar el nivel de custodia a uno más alto. Entre éstos, se encuentra el confinado de difícil manejo,[3] y el confinado que representa amenaza o peligro.[4]

Por otro lado, la Sección 8 del Reglamento Núm. 9151, *supra*, contiene un esquema de los procesos de clasificación que se utilizan para el traslado de un confinado de una institución correccional a otra. Entre los factores para solicitar el traslado se encuentran los "[**c**]**ambios en el nivel de custodia de los confiados**", y el "[**c**]**omportamiento continuo que represente un serio problema de adaptación**, **que no se ajuste a las normas de la institución y al plan institucional del confinado**". *Íd.* (Énfasis suplido).

---

[2] Véase, Apéndice K del Reglamento Núm. 9151, *supra*.

[3] El confinado de difícil manejo es aquel que presentó "problemas de manejo mientras estuvo confinado o una conducta desordenada mientras estuvo en la comunidad. Se tiene conocimiento de que el confinado ha incitado, provocado o agitado a sus compañeros, ha interrumpido las operaciones de la institución, o ha demostrado en el pasado una falta de cooperación marcada con las figuras de autoridad". *Íd.*

[4] Se refiere a aquellos casos en los que "el confinado representa un peligro o amenaza de violencia a la víctima o perjudicado del delito o comunidad por el cual el confinado está sirviendo, ya sea porque lo ha expresado verbalmente o por escrito". *Íd.*

**-B-**

En nuestro ordenamiento jurídico, las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 893 (2008). Lo anterior se fundamenta en el conocimiento especializado y la experiencia (*expertise*) sobre la materia que su ley habilitadora le confiere jurisdicción. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 436 (1997); *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 DPR 656, 672-673 (1997). En otras palabras, el conocimiento especializado de la agencia justifica que se sostengan sus determinaciones. Por lo que, en virtud de nuestro ejercicio de revisión judicial, le debemos gran deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Dpto. Corrección*, 208 DPR 656, 673-674 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021).

Dentro de este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.,* 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. A. R. Pe.,* 152 DPR 116, 122 (2000). Esto significa que el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS*, 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

Ahora bien, esa presunción de legalidad no constituye un dogma inflexible que impide la revisión judicial si no existen las condiciones que sostienen la deferencia. En el caso de *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016), el Tribunal Supremo se expresó sobre el alcance de la revisión judicial y mencionó lo siguiente:

> *[L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, **si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia** administrativa recurrida. Íd., a la* pág. 628.

(Énfasis suplido).

Por ende, como norma general, el tribunal revisor le debe respeto y deferencia al dictamen administrativo. No obstante, si el foro revisor entiende que uno de estos factores está presente, podrá entonces modificar la decisión. De lo contrario, se abstendrá a ello. Es pertinente enfatizar que la doctrina no exige que la agencia tome la mejor decisión posible, sino que el criterio a evaluar es si la misma, dentro de las circunstancias particulares del caso, es razonable. *De Jesús v. Depto. Servicios Sociales*, 123 DPR 407, 417-418 (1989). Por ende, si existe más de una interpretación razonable de los hechos, ordinariamente se avalará la decisión del foro administrativo. *Super Asphalt v. AFI y otros*, *supra*, a la pág. 819; *Torres Rivera v. Policía de PR*, *supra,* a la pág. 628.

En lo concerniente al alcance de la revisión judicial, la sección 4.5 de la de Ley de Procedimiento Administrativo Uniforme

del Gobierno de Puerto Rico limita la discreción del tribunal revisor sobre las determinaciones de hecho que realiza la agencia administrativa. 3 LPRA sec. 9675. Como consecuencia, la revisión judicial de los tribunales para determinar si un hecho se considera probado o no se limita conforme la siguiente norma:

> *El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.*
>
> ***Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.***
>
> *Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.* Ley Núm. 38-2017, 3 LPRA sec. 9675.

(Énfasis nuestro).

El Tribunal Supremo de Puerto Rico define el concepto de evidencia sustancial como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero v. Toyota*, 163 DPR 716, 728 (2005); *Misión Ind. P.R.* v. *J.P., supra*, a la pág. 131. Además, dicho Foro ha reiterado que:

> ***Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial,*** *en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. Domínguez v. Caguas Expressway Motors,* 148 DPR 387, 397-398 (1999); *Hilton Hotels v. Junta Salario Mínimo,* 74 DPR 670, 686 (1953).

(Énfasis suplido).

Por tal razón, es la parte que impugna la decisión administrativa la que tiene que producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador, de forma

que éste no pueda concluir que la decisión de la agencia fue justa, porque simple y sencillamente la prueba que consta en el expediente no la justifica. Ello implica que "[s]i en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor". *Domínguez v. Caguas Expressway Motors, supra,* a la pág. 398; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999).

**III.**

En su escrito, el señor Santos Vélez argumenta que el CTT actuó de forma ilegal, arbitraria y caprichosa. Su contención es que, no podía ser reclasificado de custodia mínima a custodia mediana, ya que no incurrió en ninguna falta. Fundamenta su posición en que no se le hizo ninguna denuncia o querella por los actos en que se basa la determinación. No le asiste la razón.

Aunque, ciertamente, el Supervisor de la Oficina de Clasificación de Confinados determinó que, según la escala de reclasificación, el señor Santos Vélez arrojó una puntuación total de 4 puntos, no es menos cierto que, aunque en tales casos se recomienda un nivel de custodia mínima, de manera discrecional, se puede modificar el nivel de custodia a uno más alto.

Según se desprende de las determinaciones de hecho de la "Resolución" recurrida, 7 de marzo 2023, el señor Santos Vélez contactó a su pareja, la Sra. N. Nieves, y la amenazó con tirotearla a ella y a sus hijos. A su vez, es un hecho determinado que, el 16 de marzo de 2023, la parte recurrente intimidó y amenazó a la maestra Ramos, incidente que fue presenciado por el Sargento Maldonado. Además, el CCT determinó que el señor Santos Vélez compartió con otros confinados información de la marca y modelo del vehículo personal de la maestra.

Precisamente, por estas razones fue que el Supervisor de la Oficina de Clasificación de Confinados concurrió con la modificación del nivel de custodia a uno más alto, entiéndase, de mínima a mediana. Esto, pues, la conducta desplegada por la parte recurrente constituye un patrón de conducta desordenada, y representa un peligro o amenaza de violencia para con la Sra. N. Nieves y la maestra Ramos. Coincidimos con dicha determinación.

Cónsono con el marco legal discutido, un confinado podrá ser reclasificado mediante revisión automática no rutinaria cuando, como ocurre en este caso, el confinado presenta un patrón de conducta negativa e incumple con el plan institucional trazado. Somos del criterio que, (1) incurrir en un patrón de conducta desordenada, (2) cometer delitos en prisión, (3) incidir en violencia de género, (4) incumplir con el plan institucional, y (5) efectuar amenaza de violencia, son actos que ameritan la modificación del nivel de custodia de mínima a mediana, según lo permite el Reglamento Núm. 9151, *supra.*

Por ende, concluimos que la conducta desplegada por el señor Santos Vélez demuestra que este último requiere un grado intermedio de supervisión. Lo anterior, por tratarse de un confinado de difícil manejo, y por representar amenaza o peligro. Por tal razón, entendemos que la asignación de custodia efectuada por el CCT es correcta, y no constituye un abuso de discreción.

Evaluada la totalidad de la prueba presentada, concluimos que la determinación de la CCT fue correcta. La parte recurrente no aportó evidencia suficiente para derrotar la presunción de corrección que caracteriza la decisión del foro administrativo. Es importante enfatizar que, al desempeñar nuestra función revisora, estamos obligados a considerar la especialización, experiencia y las cuestiones propias de la discreción o pericia de las agencias administrativas. En vista de lo anterior, consideramos que la

agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. La totalidad de la evidencia que obra en el récord nos obliga a confirmar el dictamen recurrido.

**IV.**

Por los fundamentos antes expuestos, se confirma la "Resolución" recurrida, emitida por el Comité de Clasificación y Tratamiento.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones