Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Luis A. Cordero Mangual<br><br>Recurrente<br><br>vs.<br><br>Departamento de Desarrollo Económico y Comercio; Oficina de Gerencia de Permisos (OGPe)<br><br>Recurrida | KLAN202300851 | Apelación acogida como una **REVISIÓN ADMINISTRATIVA** procedente del Departamento de Desarrollo Económico Comercio; Oficina de Gerencia de Permisos (OGPe)<br><br>Revisión Núm.: 2023-503217-SDR-013090<br>Caso Núm.: 2023-489386-LOT-014881<br><br>Sobre: Segregación (Variación en Lotificación) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de octubre de 2023.

Comparece ante nos, el señor Luis A. Cordero Mangual (Sr. Cordero Mangual o parte recurrente), quien presenta recurso de revisión administrativa en el que solicita la revocación de la "Resolución de Revisión Administrativa" emitida el 25 de agosto de 2023, por la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos (OGPe o parte recurrida). Mediante dicha determinación, se declaró No Ha Lugar la "Reconsideración" presentada por la parte recurrente.

Tras examinar la naturaleza y procedencia del caso de autos, el recurso de apelación presentado ante nuestra consideración será acogida como una revisión administrativa, aunque conservará la clasificación alfanumérica asignada por la Secretaría de este Tribunal.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, confirmamos el dictamen mediante los fundamentos que expondremos a continuación.

**I.**

El 5 de julio de 2023, el Sr. Cordero Mangual presentó ante la OGPe una solicitud de lotificación mediante variación, con el propósito de segregar unos solares dentro de un predio de terreno con cabida de 126.60 cuerdas, ubicado en los barrios Benavente de Hormigueros y Bajura de Cabo Rojo.

Evaluada su petición, el 14 de julio de 2023,[1] la OGPe archivó la solicitud de variación a lotificación presentada por la parte recurrente. Fundamentó su determinación en que, según la Sección 5.1.2.3 del Reglamento Conjunto de 2023, *infra*, el caso no podía presentarse como una lotificación mediante variación, sino a través de una Consulta de Ubicación. Lo anterior, pues, la reglamentación aplicable exige que, cuando el terreno ubique en un suelo rústico especialmente protegido, o en aquellos que sean susceptibles de inundaciones, no se tramitará la propuesta como lotificación, sino como una Consulta de Ubicación. La agencia recurrida determinó que la propiedad del Sr. Cordero Mangual se encuentra dentro de un Distrito Agrícola en Reserva Uno (AR-1 95%), y también está ubicada en una zona susceptible a inundaciones. En base a esto, razonó que, al haberse presentado el caso como una lotificación mediante variación, y no a través de una Consulta de Ubicación, procedía el archivo y la presentación del proyecto a través del trámite correspondiente.

Inconforme, el 2 de agosto de 2023, el Sr. Cordero Mangual presentó una "Reconsideración" ante la División de Revisiones Administrativas de la OGPe. Entre otras cosas, argumentó que se

---

[1] Notificada en igual fecha.

le estaba violentando su debido proceso de ley, y que la propiedad en cuestión fue adquirida "el 23 de julio de 2003, o sea antes de entrar en vigor cualquier ley de protección de terrenos o la Reserva Agrícola que se pretende aplicar".

Evaluada su solicitud, el 16 de agosto de 2023, la División de Revisiones Administrativas de la OGPe decidió acoger la "Reconsideración" presentada ante sí. Con motivo de lo anterior, el 25 de agosto de 2023, la División de Revisiones Administrativas de la OGPe emitió una "Resolución de Revisión Administrativa", y declaró No Ha Lugar la revisión solicitada por el Sr. Cordero Mangual. Concluyó que la OGPe actuó correctamente, y de conformidad con las disposiciones del Reglamento Núm. 9473-2023. Reiteró que, como la propiedad ubica en un 95% en Suelo Rústico Especialmente Protegido (SREP-A), el caso debía radicarse a través de una Consulta de Ubicación.

Aún insatisfecho, el Sr. Cordero Mangual recurre ante esta segunda instancia judicial, y señala la comisión de los siguientes errores, a saber:

1. *Erró la agencia administradora al no celebrar una vista, lo cual constituye una abierta violación al debido proceso de ley.*

2. *Erró la agencia administradora en denegar la segregación de un solar que físicamente se había formado en el 1989.*

3. *Erró la agencia administradora en no examinar que, al momento d de la formación del solar y la construcción de la estructura residencial, la ley que aplicaba era la del 1989.*

**II.**

**-A-**

La Ley Núm. 161-2009, 23 LPRA sec. 9011 *et seq.*, mejor conocida como la Ley para la Reforma del Proceso de Permisos de Puerto Rico, según enmendada, provee el marco jurídico para la solicitud, evaluación, concesión y denegación de permisos en el

Gobierno de Puerto Rico.  A esos fines, se ordenó a la Junta de Planificación, con colaboración de la Oficina de Gerencia de Permisos, a promulgar un Reglamento Conjunto para establecer y aplicar, entre otros asuntos, "la evaluación y expedición de determinaciones finales, permisos y recomendaciones relacionados a obras de construcción y uso de terrenos".  Art. 15.1 de la Ley Núm. 161-2009, 23 LPRA sec. 9025.

En virtud de lo anterior, el 16 de junio de 2023, se adoptó el Reglamento Núm. 9473, titulado "Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios" (Reglamento Conjunto de 2023).  En lo concerniente, la Sección 5.1.2.3 del Reglamento Conjunto de 2023, dispone que:

> *a. No se tramitarán como lotificaciones aquellas propuestas en terrenos que:*
>
> *1. Ubique en Suelo Rústico Especialmente Protegido (SREP).*
>
> *2. Revistan de importancia para el patrimonio histórico o cultural.*
>
> *3. Requieran la preservación de su flora o fauna por su importancia económica, ecológica o científica.*
>
> *4. Sean susceptibles a inundaciones, deslizamientos o marejadas, proyectos ubicados sobre depósitos de deslizamientos (QI), según los cuadrángulos geológicos de Puerto Rico preparados por el USGS o en terrenos con historial de deslizamientos.*
>
> *5. Sean áreas cuyos rasgos topográficos o su vegetación tengan un significado especial para la comunidad.*
>
> *6. Ubiquen dentro de la zona costanera según definida en el Plan de Manejo de la Zona Costanera.*
>
> *7. Cuando su acceso directo sea a través de las siguientes vías arteriales: PR-1, PR-2, PR-3, PR-10, PR-17, PR-18, PR-20, PR-22, PR-26, PR-30, PR-52, PR-53 y PR-66.*
>
> *8. Que formen parte de un Plan de Ordenación Territorial que no lo permita.*

*9. Que sean incompatibles con el uso de las zonas agrícolas y proyectos agropecuarios existentes.*

*b. Los casos afectados por las disposiciones antes mencionadas deberán radicarse a través de una Consulta de Ubicación.*

Por otro lado, el Art. 6.006 del Código Municipal,[2] 21 LPRA sec. 7856, autoriza a los municipios a adoptar los Planes de Ordenación. Según definido por el propio Código Municipal, un Plan de Ordenación es aquél que crea el municipio "para disponer el uso del suelo dentro de sus límites territoriales y promover el bienestar social y económico de la población". Véase, Art. 8.001 del Código Municipal, 21 LPRA sec. 8351. Habrá tres tipos de Planes de Ordenación, a saber: (1) Plan Territorial, (2) Plan de Ensanche, y (3) Plan de Área. Art. 6.006 del Código Municipal, *supra.* El Plan Territorial es el primer Plan de Ordenación que debe preparar el municipio y, una vez entre en vigor, "toda decisión sobre el uso del suelo se hará de conformidad con el mismo". Art. 6.007 del Código Municipal, Ley 107-2020, 21 LPRA sec. 7856.

Una de sus funciones será dividir la totalidad del suelo municipal en tres categorías: (1) suelo urbano, (2) suelo urbanizable, y (3) suelo rústico. *Íd.* A su vez, dentro del suelo rústico el Plan Territorial establecerá dos categorías: (1) Suelo Rústico Común y (2) Suelo Rústico Especialmente Protegido. Este último "[e]s aquel no contemplado para uso urbano o urbanizable en un Plan Territorial, y que por su especial ubicación, topografía, valor estético, arqueológico o ecológico, recursos naturales únicos u otros atributos, se identifica como un terreno que nunca deberá utilizarse como suelo urbano". *Íd.*

Aquellos municipios que cuenten con un Plan Territorial deberán armonizarlo conforme las disposiciones del Reglamento

---

[2] Ley 107-2020, según enmendada.

Conjunto de 2023. Véase, Regla 6.1.1 del Reglamento Conjunto de 2023. Según la Tabla de Equivalencias Distritos de Calificación, un Distrito Agrícola en Reserva Uno (AR-1) es calificado como un Distrito Agrícola Productivo (AP). *Íd.*

**-B-**

La Constitución de Puerto Rico establece que ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley. Véase, Art. II, Sec. 7 Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1. Esa protección constitucional se manifiesta en dos vertientes distintas, a saber: (1) vertiente sustantiva, y (2) vertiente procesal. *Meléndez de León et al. v. Keleher et al.*, 200 DPR 740, 759 (2018). En lo pertinente, esta última "impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo". *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 887-888 (1993). Por lo que, cuando el Estado atenta contra el interés libertario o propietario de una persona, deberá resguardar las garantías siguientes: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el expediente. *Vázquez González v. Mun. de San Juan*, 178 DPR 636, 643 (2010). De esta forma, el Estado cumple con garantizar el debido proceso de ley en su modalidad procesal, y a su vez, asegura que sus actuaciones sean justas e imparciales. *Díaz Carrasquillo v. García Padilla*, 191 DPR 97, 111 (2014). Por lo anterior, nuestro Alto Foro ha sido enfático en que, para poder privar a un individuo de su libertad o propiedad, es necesario que se le otorgue la oportunidad de ser oído antes de que se adjudique el derecho involucrado, pues, de lo contrario, se

laceraría el debido proceso. *Rivera Rodríguez & Co. v. Lee Stowell, etc., supra,* a la pág. 889.

**-C-**

Como regla general, en nuestra jurisdicción rige el principio de la irretroactividad de las leyes. No obstante, este precepto no es absoluto, pues, aun cuando se disponga expresamente que una ley será de aplicación retroactiva, ello, de ordinario, no puede menoscabar obligaciones contractuales o perjudicar derechos adquiridos. *Con. Tit. Acquamrina et al. v. Triple-S,* 210 DPR 344, 365 (2022). Así surge del texto del Art. 9 del Código Civil de 2020, 31 LPRA sec. 5323, el cual establece que "[l]a ley no tiene efecto retroactivo, excepto cuando se dispone expresamente lo contrario. El efecto retroactivo de una ley, no puede perjudicar los derechos adquiridos al amparo de una ley anterior".

Respecto a qué puede considerarse un derecho adquirido, nuestro Tribunal Supremo expresó en *Consejo Titulares v. Williams Hospitality,* 168 DPR 101, 109 (2006), lo siguiente:

> *[E]l derecho adquirido no puede ser el conjunto de facultades que la ley anterior permitía que los ciudadanos ejercitaran, ya que esto sería el estado de derecho objetivo que la nueva ley intenta cambiar. El derecho adquirido, en cambio, es una situación consumada, en la que las partes afectadas descansaron en el estado de derecho que regía al amparo de la ley anterior. [...]*

**-D-**

En nuestro ordenamiento jurídico, las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 893 (2008). Lo anterior se fundamenta en el conocimiento especializado y la experiencia (*expertise*) sobre la materia que su ley habilitadora le confiere jurisdicción. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 436 (1997); *Misión Ind. P.R.*

*v. J.P. y A.A.A.*, 142 DPR 656, 672-673 (1997). En otras palabras, el conocimiento especializado de la agencia justifica que se sostengan sus determinaciones. Por lo que, en virtud de nuestro ejercicio de revisión judicial, le debemos gran deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Dpto. Corrección*, 208 DPR 656, 673-674 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021).

Dentro de este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. A. R. Pe.*, 152 DPR 116, 122 (2000). Esto significa que el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS*, 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

Ahora bien, esa presunción de legalidad no constituye un dogma inflexible que impide la revisión judicial si no existen las condiciones que sostienen la deferencia. En el caso de *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016), el Tribunal Supremo se expresó sobre el alcance de la revisión judicial y mencionó lo siguiente:

> *[L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo*

*administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida. Íd., a la pág. 628.*

Por ende, como norma general, el tribunal revisor le debe respeto y deferencia al dictamen administrativo. No obstante, si el foro revisor entiende que uno de estos factores está presente, podrá entonces modificar la decisión. De lo contrario, se abstendrá a ello. Es pertinente enfatizar que la doctrina no exige que la agencia tome la mejor decisión posible, sino que el criterio a evaluar es si la misma, dentro de las circunstancias particulares del caso, es razonable. *De Jesús v. Depto. Servicios Sociales*, 123 DPR 407, 417-418 (1989). Por ende, si existe más de una interpretación razonable de los hechos, ordinariamente se avalará la decisión del foro administrativo. *Super Asphalt v. AFI y otros, supra,* a la pág. 819; *Torres Rivera v. Policía de PR, supra,* a la pág. 628.

En lo concerniente al alcance de la revisión judicial, la sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675, mejor conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, según enmendada, limita la discreción del tribunal revisor sobre las determinaciones de hecho que realiza la agencia administrativa. Como consecuencia, la revisión judicial de los tribunales para determinar si un hecho se considera probado o no se limita conforme la siguiente norma:

*El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.*

*Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.*

*Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Íd.*

El Tribunal Supremo de Puerto Rico define el concepto de evidencia sustancial como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero v. Toyota*, 163 DPR 716, 728 (2005); *Misión Ind. P.R.* v. *J.P.*, *supra*, a la pág. 131. Además, dicho Foro ha reiterado que:

> *Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. Domínguez v. Caguas Expressway Motors, 148 DPR 387, 397-398 (1999); Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 686 (1953).*

Por tal razón, es la parte que impugna la decisión administrativa la que tiene que producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador, de forma que éste no pueda concluir que la decisión de la agencia fue justa, porque simple y sencillamente la prueba que consta en el expediente no la justifica. Ello implica que, "[s]i en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor". *Domínguez v. Caguas Expressway Motors, supra*, a la pág. 398; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999).

### III.

Según se desprende del trámite procesal ya discutido, el Sr. Cordero Mangual presentó ante la OGPe una solicitud de lotificación mediante variación, con el propósito de segregar una

propiedad. Sin embargo, la OGPe archivó su solicitud, por entender que, de conformidad con la Sección 5.1.2.3 del Reglamento Conjunto de 2023, *supra*, el caso debía presentarse mediante una Consulta de Ubicación.

En su escrito, el Sr. Cordero Mangual solicita la revocación de esta determinación bajo dos fundamentos principales: (1) la OGPe denegó la segregación amparándose en la reglamentación vigente, a pesar de que los derechos de la parte recurrente surgieron en el 1989, año en que se formó el solar objeto de la segregación; y (2) no se le concedió oportunidad de presentar prueba a su favor en una vista.

En cuanto al primer argumento, el Sr. Cordero Mangual alega poseer un derecho adquirido sobre la reglamentación vigente en el año 1989, la cual, según él, no prohibía la segregación solicitada. No obstante, **aquí no nos encontramos ante una situación consumada** (un contrato, por ejemplo) **para propósitos de un derecho adquirido en vigencia de la ley anterior**. Como ha expresado nuestro Máximo Foro:

> *En este sentido, **el derecho adquirido no puede ser el conjunto de facultades que la ley anterior permitía que los ciudadanos ejercitaran, ya que esto sería el estado de derecho objetivo que la nueva ley intenta cambiar. El derecho adquirido**, en cambio, es una situación consumada, en la que las partes afectadas descansaron en el estado de derecho que regía al amparo de la ley anterior*. Consejo Titulares v. Williams Hospitality, *supra,* a la pág. 109. (Énfasis nuestro).

Por entender que la parte recurrente no posee un derecho adquirido al amparo de la reglamentación de 1989, y que la reglamentación y legislación vigente fue aprobada con el propósito de cambiar el estado de derecho, concluimos que **la pretensión del Sr. Cordero Mangual es perpetuar el estado de derecho objetivo de la ley anterior**, **el cual ya no es vinculante**. Por ende, actuó correctamente la OGPe al archivar la solicitud de

lotificación mediante variación presentada por el Sr. Cordero Mangual, amparándose en el Reglamento Conjunto de 2023.

Según las determinaciones de hecho efectuadas por la agencia recurrida, a las cuales le debemos deferencia, la propiedad del Sr. Cordero Mangual se encuentra dentro de un Distrito Agrícola en Reserva Uno (AR-1 95%), y está ubicada en una zona susceptible a inundaciones. Conforme el derecho antes esbozado, la Sección 5.1.2.3 del Reglamento Conjunto de 2023, *supra*, claramente dispone que no se tramitarán como lotificaciones aquellas propuestas en terrenos que ubiquen en Suelo Rústico Especialmente Protegido (SREP), sino que, éstas deberán radicarse a través de una Consulta de Ubicación. Por ende, tal y como determinó la OGPe, el trámite adecuado es la Consulta de Ubicación.

Por otro lado, el Sr. Cordero Mangual aduce que se le violentó su debido proceso de ley, ya que no se le garantizó el derecho a ser oído. Tampoco le asiste la razón.

La aplicabilidad del debido proceso de ley en su vertiente procesal requiere la existencia de un interés propietario o libertario que pueda verse afectado. Identificado dicho interés, procede entonces determinar cuál es el procedimiento exigido, el cual debe caracterizarse por ser justo e imparcial.

Resolvemos que, en este caso, **el Sr. Cordero Mangual no tiene un interés de propiedad o libertad que pueda afectarse**. Evidentemente, en la causa de epígrafe no se alude a ningún interés de libertad. Aún asumiendo que la parte recurrente posee un interés propietario, tal interés nunca fue indebidamente afectado. Aquí, la determinación de la OGPe fue conforme a derecho, y se explicaron las razones para el archivo, consignándose además las determinaciones de hecho y los fundamentos para ello. En palabras sencillas, no se le violentó el debido proceso al Sr.

Cordero Mangual, puesto que el procedimiento fue uno justo e imparcial. Por consiguiente, el error no fue cometido.

**IV.**

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, se confirma la "Resolución de Revisión Administrativa", emitida por la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones