MARÍA A. DE JESÚS COTTO, demandante y peticionaria, *v.* DEPARTAMENTO DE SERVICIOS SOCIALES, representado por la SECRETARIA DE SERVICIOS SOCIALES, HON. CARMEN S. ZAYAS, demandado y recurrido.

*Número:* CE-88-316      *Resuelto:* 8 de marzo de 1989

*Luis M. Martínez Rivera*, abogado de la peticionaria; *Rafael Ortiz Carrión, Procurador General*, y *Carlos M. Vergne Vargas, Procurador General Auxiliar*, abogados del recurrido.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

I

Este caso nos brinda la oportunidad de resolver si a la luz de la nueva reglamentación federal aprobada en 1984 para el Programa de Asistencia Económica de Ayuda a Familias con Niños —*Aid to Families with Dependent Children*— (en adelante Programa A.F.D.C.) debe incluirse, como parte del ingreso del núcleo familiar categórico, la pensión alimentaria recibida por un niño no beneficiario del programa que vive junto a hermanos o hermanas que sí lo son.

La peticionaria María E. De Jesús Cotto, madre de cuatro (4) hijos menores de diferentes padres, era participante del Programa de Asistencia Económica (en adelante P.A.E.) en la categoría "C", Ayuda a Familias con Niños Necesitados. Recibía beneficios para ella y tres (3) de sus hijos. Su

hijo menor, Jorge Luis López, no participaba de dichos beneficios, ya que recibía pensión alimentaria de su padre. La reglamentación federal vigente hasta 1984 permitía excluir como parte del ingreso del núcleo familiar categórico la pensión recibida por el menor Jorge Luis.

A la luz de las normas federales de 1984, la agencia local administradora del Programa A.F.D.C. (el Departamento de Servicios Sociales) inició una revisión del caso de la señora De Jesús Cotto. Como resultado de ello, obligó a la peticionaria a incluir a su hijo menor Jorge Luis, así como su ingreso, dentro del núcleo familiar categórico. La peticionaria se negó y el núcleo completo resultó inelegible para continuar recibiendo los beneficios del Programa A.F.D.C. No conforme, la señora De Jesús Cotto presentó una apelación ante la Junta de Apelaciones de Servicios Sociales (en adelante Junta). La Junta confirmó la acción tomada por la agencia. Determinó que Jorge Luis era un "niño necesitado" que cumplía con los requisitos de edad y de privación y, por lo tanto, tenía que ser incluido en el núcleo categórico. Se fundamentó en el Cap. V, pág. 9, del Manual de Normas y Procedimientos del Programa de Asistencia Pública, que en lo pertinente dispone que "se incluirán en el núcleo categórico a hermanas o hermanos de sangre o adoptivos del niño que a su vez sean niños dependientes".

De esta resolución la señora De Jesús Cotto recurrió en revisión ante el Tribunal Superior, Sala de Caguas. El 2 de marzo de 1988 el tribunal dictó sentencia mediante la cual se le denegaba el recurso a la luz de lo resuelto en *Bowen v. Gilliard*, 483 U.S. 587 (1987).[1]

No conforme, la señora De Jesús recurre ante nos y plantea la comisión de dos (2) errores: (1) que erró el tribunal de instancia al aplicar la jurisprudencia de *Bowen v. Gilliard*,

---

[1] La peticionaria presentó moción de reconsideración, la cual también fue denegada.

supra, a los hechos del presente caso y (2) que erró al sostener la determinación de la Junta de que el niño Jorge Luis López es un "niño necesitado" y que tenía que ser incluido en el núcleo familiar categórico.

Decidimos revisar y expedimos el recurso.

## II

El Programa A.F.D.C. surge de una legislación federal de carácter social que se nutre de fondos federales y estatales. Véanse: 42 U.S.C. sec. 601 *et seq.*; Ley de Bienestar Público de Puerto Rico, Ley Núm. 95 de 12 de mayo de 1943, según enmendada, 8 L.P.R.A. secs. 1–26; 45 C.F.R. sec. 200 *et seq.* Los estados no están obligados a participar en el Programa A.F.D.C., pero si optan por ello deben cumplir en su plan de trabajo con los requisitos del Título IV-A de la Ley sobre el Seguro Social, 42 U.S.C. sec. 301 *et seq.*, y las reglamentaciones federales aplicables. *Oliver v. Ledbetter*, 624 F. Supp. 325 (N.D. Ga. 1985), *aff.* 821 F.2d 1507 (11mo Cir. 1987); 42 U.S.C. secs. 602–603. En Puerto Rico, por disposición expresa de la Ley Núm. 171 de 30 de junio de 1968, según enmendada, 3 L.P.R.A. sec. 211 y ss., el Programa A.F.D.C. es administrado por el Departamento de Servicios Sociales.

Los criterios de elegibilidad que dispone la Ley Núm. 95, *supra*, son los siguientes:

*Sec. 14.— Niños necesitados*

Se concederá asistencia pública a todo niño necesitado menor de diez y ocho (18) años, que debido a la muerte, *ausencia continua del hogar*, incapacidad física o mental de uno de los padres, esté viviendo con el padre, la madre, el abuelo, abuela, hermano, hermana, padrastro, madrastra, hermanastro, hermanastra, tío o tía, primo o prima, sobrino o sobrina en un lugar de residencia sostenido como propio por uno o más de ellos; Disponiéndose, que cuando el menor carezca de estos familiares o cuando no se considere apropiado para el niño el

hogar de ellos, la División podría concederle asistencia siempre que el niño esté bajo la custodia de una persona mayor de edad y de reconocida solvencia moral que esté genuinamente interesada en el bienestar del niño y en condiciones de proveerle un hogar bajo supervisión de esta División. (Énfasis nuestro.) 8 L.P.R.A. sec. 14.

La Sec. 606(a) del *Social Security Act*, 42 U.S.C., define el término "niño necesitado" de la manera siguiente:

The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of death, continued absence from the home . . . or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousing, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home and, (2) who is (A) under the age. of eighteen. . . .

En 1984 el Congreso aprobó el *Deficit Reduction Act* (en adelante D.E.F.R.A.) como parte de una extensa pieza legislativa dirigida a disminuir los gastos del Gobierno federal. Public Law No. 98–369, 98 Stat. 1145. La Sec. 2640 del D.E.F.R.A. enmendó la Sec. 602 añadiéndole el párrafo 38, que lee como sigue:

(38) provide that in making the determination under paragraph (7) with respect to a dependent child and applying paragraph (8), *the State agency shall (except as otherwise provided in this part) include—*
(A) any parent of such child, and
(B) *any brother or sister of such child, if such brother or sister meets the conditions described in clauses (1) and (2) of section 406(a),* if such parent, brother, or sister is living in the same home as the dependent child, and any income of or available for such parent, brother or sister shall be included in making such determination and applying such paragraph with respect to the family . . . . (Énfasis suplido.) Pub. L. No. 98–369, *supra.*

El Secretario del Departamento de Salud y Servicios Humanos de Estados Unidos (en adelante Secretario de Salud de E.U.) promulgó en 1984 el reglamento aplicable a dicha disposición. En su parte pertinente, señala lo siguiente:

> For AFDC only, in order for the family to be eligible an application with respect to a dependent child must also include, if living in the same household and otherwise eligible for assistance: . . . Any blood-related or adoptive brother or sister. 45 C.F.R. sec. 206.10(a)(1)(VII)(B).

A tenor con la enmienda y el reglamento federal de 1984, el Departamento de Servicios Sociales enmendó el Cap. V del Manual de Normas y Procedimientos del Programa de Asistencia Económica para que dispusiera lo siguiente:

> Como resultado del ["]Deficit Reduction Act" (Ley Pública Federal 98–369 del 18 de julio de 1984[),] se requiere que en el núcleo categórico AFNN[(AFDC)], sean inclu[i]das, si conviven en el hogar con el niño(s) dependiente, las siguientes personas:
>
> —[l]os padres naturales o adoptivos del niño(s) dependiente(s).
>
> —hermanos y hermanas de sangre o adoptivos del niño(s) dependiente(s) y que a su vez son niños dependientes que llenan los requisitos de edad y de privación (el niño está privado del sostén económico, cuidado físico o guía).

█ Con respecto al efecto de la enmienda a la ley federal y el reglamento que la implantaba, aprobados en 1984, la posición del Departamento de Servicios Sociales es que un niño, al vivir separado de su padre y al cuidado de su madre —aun cuando reciba pensión alimentaria— es elegible para el programa, ya que la ausencia continuada del padre le impide proveerle el cuidado físico y las guías necesarias para su desarrollo.(2) Igual posición asumió el Secretario de Salud de E.U. en *Gorrie v. Bowen*, 809 F.2d 508 (8vo Cir. 1987). En

---

(2) *Oposición a recurso*, Civil Núm. CS87-2128(508), pág. 5.

este caso, el Secretario de Salud de E.U. apeló de la determinación de la Corte de Distrito federal de Minnesota, que sostenía que para poder incluir dentro del grupo categórico a niños que recibían pensiones alimentarias, los mismos tenían que ser necesitados, y que para hacer esta determinación no bastaba con probar que uno de los padres estaba ausente, muerto o incapacitado. *Gorrie v. Heckler*, 624 F. Supp. 85 (D. Minn. 1985).(3) La Corte Federal de Apelaciones para el Octavo Circuito revocó y concluyó que la decisión era contraria, tanto al historial legislativo como a un análisis de la letra de la ley:

> We believe the plain language of the statute is contrary to the district court's conclusion. Congress referred only to siblings who meet the conditions of "clauses (1) and (2) of [42 U.S.C.] section 606(a)." 42 U.S.C. sec. 602(a)(38) (Sup. III 1985). These clauses do not require a child to be needy; that requirement precedes the clauses. Consequently, Congress' reference to sections 606(a)(1) and (2) does not preclude a congressional intent that independently supported children may be included in AFDC applications. Furthermore, the provisions of section 606(a)(2), which require that a child be deprived of "parental support or care," do not conflict with a congressional intent to include independently supported children in AFDC applications. *Although independently supported children are not deprived of parental support, they are deprived of the care of a parent; thus they meet the disjunctive requirement of section 606(a)(2).* (Énfasis suplido.) *Gorrie v. Bowen*, supra, pág. 514.

(3) La posición del Secretario de Salud de E.U. fue:

"Instead, the defendant Secretary has focused solely upon whether these children have one parent who is absent, deceased or incapacitated *and the New Rule creates an irrebuttable presumption that the status of that parent is conclusive evidence that the Social Security recipient child is a 'needy' dependent child who must actually file* an application for AFDC benefits without regard to whether such children either need or desire welfare assistance." (Énfasis suplido.) *Gorrie v. Heckler*, 624 F. Supp. 85, 87–88 (D. Minn. 1985).

En *Baldwin v. Ledbetter*, 647 F. Supp. 623, 629 (N.D. Ga. 1986),[4] se interpretó de modo similar la reglamentación del Secretario de Salud de E.U.:[5]

> Child support recipients are minors and *are by definition deprived of parental support by virtue of the absence of one parent from the home.* (Énfasis suplido.)

■ La peticionaria plantea que la interpretación del Departamento de Servicios Sociales es incompatible con la Sec. 606(a), *supra.* Esta sección establece, como requisito para que un niño sea incluido en el núcleo familiar categórico, que se determine si dicho niño es un "niño necesitado" (*dependent child*). Alega que a tenor con la reglamentación federal que define "niño necesitado" (*dependent child*), el menor Jorge Luis no cualifica para ser incluido en el Programa A.F.D.C. La referida reglamentación dispone:

> The phrase "needy child *** deprived *** by reason of" requires that both need and deprivation of parental support or care exist in the individual case. The phrase encompasses the situation of any child who is in need and otherwise eligible, and whose parent —father or mother— either has died, has a physical or mental incapacity, *or is continually absent from the home.*
>
> .        .        .        .        .        .        .        .        .
>
> (*iii*) *Continued absence of the parent from the home.* Continued absence of the parent from the home constitutes

(4) Este caso fue devuelto al tribunal para resolverse de acuerdo con lo establecido en *Bowen v. Gilliard*, 483 U.S. 587 (1987).

(5) La validez de la reglamentación ha sido sostenida en varias Cortes de Distrito federales. En *Sherrod v. Hegstrom*, 629 F. Supp. 150, 152 (D. Or. 1985), los demandantes impugnaron la reglamentación del Secretario de Salud de E.U. e indicaron que la misma violaba el esquema estatutario de la Ley del Seguro Social al obligar a niños no dependientes a solicitar los beneficios del bienestar social para que su unidad familiar fuese elegible para recibirlos. El tribunal indicó que el historial legislativo del estatuto sostenía la interpretación del Secretario de Salud de E.U. de incluir los ingresos recibidos por concepto de pensión alimentaria como parte del ingreso familiar disponible. Véase, también, *Ardister v. Mansour*, 627 F. Supp. 641, 645 (W.D. Mich. 1986).

the reason for deprivation of parental support or care when the parent is out of the home, *the nature of the absence is such as either to interrupt or to terminate the parent's functioning as a provider of maintenance, physical care, or guidance for the child, and the known or indefinite duration of the absence precludes counting on the parent's performance of the function of planning for the present support or care of the child.* (Énfasis suplido.) 45 C.F.R. sec. 233.90(c)(1)(*i*) y (*iii*).

◼ Plantea además la peticionaria que para poder ser incluido en el grupo familiar categórico la ausencia del padre debe ser de tal naturaleza que impida su contribución al cuidado físico, mantenimiento y guía del niño. Cita en apoyo lo decidido en varios casos resueltos ante las cortes federales y estatales. Los citados casos, que resuelven que la determinación de "ausencia" para propósitos del Programa A.F.D.C. acarrea un análisis tanto cualitativo como cuantitativo de la naturaleza de esa ausencia, son anteriores a la enmienda de 1984. Una lectura integral de los casos resueltos con posterioridad a la enmienda refleja que los mismos no sostienen estos planteamientos.[6] El solo hecho de que el niño reciba una pensión alimentaria no es suficiente para considerarlo inelegible para el Programa A.F.D.C. Comentario, *The Evolution of a Federal Family Law Policy Under Title IV-A of*

---

[6] Los tribunales federales y estatales con anterioridad a la enmienda y reglamentación de 1984 habían cualificado el término "niño dependiente". En *Gilliard v. Craig*, 331 F. Supp. 587 (W.D.N.C. 1971), *aff.* 409 U.S. 807 (1972), resuelto antes de las enmiendas del *Deficit Reduction Act* (en adelante D.E.F.R.A.), el tribunal sostuvo que un niño que vive separado de su padre no custodio y recibe sostén económico de éste no es un *dependent child*. En *Shannon v. Department of Human Services*, 384 A.2d 899, 902 (N.J. Super. A.D. 1978), también resuelto antes de la enmienda, el tribunal devolvió el caso para que se determinara si la naturaleza y frecuencia de las visitas del padre no custodio hacían inelegible al niño para recibir beneficios como *dependent child*. Véanse, además: *Burrus v. Dept. of Hum. Ser, D. of Pub. Wel.*, 476 A.2d 285 (N.J. Super. A.D. 1984); *Snyder v. Com., Dept. of Public Welfare*, 492 A.2d 124 (Pa. Cmwlth. 1985); *Munro-Dorsey v. Department of Social Welfare*, 481 A.2d 1055 (Vt. 1984). Aunque algunos de estos casos fueron resueltos luego de las enmiendas de 1984, en los mismos no se discute el efecto de éstas sobre la legislación federal.

*the Social Security Act — The Aid to Families with Dependent Children Program*, 36 Cath. U.L. Rev. 197, 202, 206 (1986). Antes de la enmienda de 1984, la determinación de privación del niño se hacía a la luz de las circunstancias particulares de la relación paterno-filial.(7)

Analicemos el historial legislativo y la letra de la ley para determinar si a la luz de la enmienda y reglamentación de 1984 se puede mantener esta interpretación de "ausencia" para propósitos del Programa A.F.D.C. En el resumen del Informe del Senado sobre las Enmiendas al Programa A.F.D.C. se expresa lo siguiente:

> There is no requirement in present law that parents and all siblings be included in the AFDC filing unit. Families applying for assistance may exclude from the filing unit certain family members who have income which might reduce the family benefit. For example, a family might choose to exclude a child who is receiving social security or child support payments, if the payments would reduce the family's benefits by an amount greater than the amount payable on behalf of the child . . . .

·    ·    ·    ·    ·    ·    ·

### Explanation of Provision

> The provision approved by the Committee would require States to include in the filing unit the parents and all dependent minor siblings (except SSI recipients and any stepbro-

---

(7) Sobre el particular se nos señala en Comentario, *The Evolution of a Federal Family Law Policy Under Title IV-A of the Social Security Act—The Aid to Families with Dependent Children Program*, 36 Cath. U.L. Rev. 197, 204 (1986), lo siguiente:

"Moreover, the absent parent in today's AFDC program is likely to be making some child support payments on behalf of the child and is encouraged to establish contact with the family. Consequently, the current interpretation of what constitutes continued absence has little resemblance to the rule adopted in the early AFDC program. Under the early rule, if an absent parent voluntarily provided child support payments or visited the children on a regular basis, the family usually lost its AFDC eligibility. In the above situation, the child would be deemed not deprived of parental support or care because the absent parent provided maintenance or guidance to the child." (Escolios omitidos.)

thers and stepsisters) living with a child who applies for or receives AFDC . . .

*This change will end the present practice whereby families exclude members with income in order to maximize family benefits, and will ensure that the income of family members who live together and share expenses is recognized and counted as available to the family as a whole.* (Énfasis suplido.) Informe del Senado Núm. 98–169, pág. 980 (1984).

■ No cabe duda que la intención del Congreso al aprobar en 1984 la enmienda al Programa A.F.D.C. fue incluir dentro del ingreso disponible para la unidad familiar el ingreso recibido por los miembros del núcleo que bajo la anterior ley podía ser excluido. La interpretación del Departamento de Servicios Sociales de que el niño está desprovisto del cuidado paterno cuando el padre no vive en el hogar refleja la intención de la enmienda. *Gilliard v. Kirk*, 633 F. Supp. 1529 (W.D.N.C. 1986), según citado en *Bowen v. Gilliard*, supra.(8)

■ Es norma establecida que la interpretación de la agencia encargada de la administración de un estatuto me-

---

(8) La peticionaria plantea como primer error la aplicación de *Bowen v. Gilliard*, supra, al presente caso. Si bien es cierto que el referido caso lo que sostiene es la constitucionalidad de las enmiendas del D.E.F.R.A. al Programa A.F.D.C., en la nota al calce Núm. 4, el tribunal acoge la interpretación de la Corte de Distrito, la cual es contraria a la sostenida por la peticionaria. La nota al calce Núm. 5 lee:

"In support of the District Court's judgment, appellees have asked us to adopt a construction of the statute that is completely inconsistent with the intent of Congress as explained in the Secretary's request for the legislation, in the Senate Report, and in the Conference Report as well. Moreover, the arguments are inconsistent with the unambiguous regulations the Secretary has adopted to implement the statute. . . . *The District Court carefully considered these statutory arguments and rejected them . . . . We agree with that court's analysis of the meaning of the statute and find no merit in appellees's statutory arguments advanced in this Court.* See also *Gorrie v*[.] *Bowen*, 809 F[.]2d 508, 513–516 (CA8 1987). [*Gilliard v. Kirk*, 633 F. Supp. 1529, 1548 (W.D.N.C. 1986)]." (Énfasis suplido.) *Bowen v. Gilliard*, supra, pág. 496 n. 5.

rece deferencia sustancial. *Asoc. Médica de P.R. v. Cruz Azul*, 118 D.P.R. 669 (1987); *Blum v. Bacon*, 457 U.S. 132, 141 (1982). Más aún, la interpretación adoptada por la agencia no necesita ser la única razonable, *American Paper Inst. v. American Elec. Power*, 461 U.S. 402, 423 (1983); ésta merecerá deferencia si es razonable y compatible con el propósito del Congreso. *Blum v. Bacon*, supra, págs. 141–142.

En el caso de autos, tanto la interpretación del Departamento de Servicios Sociales como las del Departamento de Salud de Estados Unidos, no sólo se ajustan a las normas de razonabilidad y consistencia, sino que se adhieren y fomentan el claro propósito del Congreso, al aprobarse el D.E.F.R.A., de disminuir la erogación de fondos federales.

Tomando en consideración todo lo anteriormente expuesto, *se dictará sentencia mediante la cual se confirme la emitida el 2 de marzo de 1988 por el Tribunal Superior, Sala de Caguas.*

El Juez Asociado Señor Ortiz se inhibió.