ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| BELLA INTERNATIONAL, LLC; INTERNATIONAL AUTOMOTIVE DISTRIBUTOR GROUP, LLC; POMPINA INVESTMENTS, LLC.<br><br>Recurrentes<br><br>V.<br><br>MAYS CHEMICAL COMPANY OF PUERTO RICO, INC. H/N/C MAYS OCHOA; OFICINA DE PERMISOS<br><br>Recurridos | KLRA202400094 | *RECURSO DE REVISIÓN ADMINISTRATIVA* de Permiso de Construcción emitido por la Oficina de Gerencia de Permisos<br><br>Caso Núm. 2023-485458-PCOC-034523<br><br>Sobre:<br><br>Permiso de Construcción |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 23 de abril de 2024.

Bella International, LLC (Bella), International Automotive Distributor Group, LLC (International) y Pompina Investments, LLC (Pompina), (en conjunto los Recurrentes) solicitan la revocación del *Permiso de Construcción* 2023-485458-PCOC-034523 que emitió la Oficina de Gerencia de Permisos (OGPe) el 29 de diciembre de 2023 a favor de la proponente Mays Chemical Company of Puerto Rico, Inc. (Mays). El proyecto proponía la instalación industrial dedicada a la venta, distribución y almacenamiento de sustancias químicas. Contempla la adición de una operación de fabricación de sustancias químicas dentro de las instalaciones.[1]

---

[1] Apéndice del recurso de revisión, págs. 29-34.

Número Identificador

SEN2024 _____

Por las razones que exponemos a continuación, confirmamos la determinación recurrida.

**I.**

El 11 de abril de 2019, Mays adoptó una *Resolución Corporativa*, aprobando el que se tomaran los pasos para el "diseño y construcción de la Planta de Manufactura de Hipoclorito de Sodio."[2] Surge del *Recurso de Revisión* que en el mes de agosto del mismo año, la OGPE emitió la Certificación de Cumplimiento Ambiental por Exclusión Categórica.[3]

Luego, el 24 de febrero de 2020, la OGPE emitió el permiso de construcción 2019-265582-PCOC-001554 con el que Mays construyó la planta para la manufactura de hipoclorito de sodio.[4]

El 15 de junio de 2022, Mays presentó ante la OGPe el documento ambiental conocido como Recomendación Ambiental (REA) 2022-426950-REA-009508.[5] La REA fue aprobada por la OGPe el 2 de agosto de 2022.[6]

Mays presentó también la Determinación Ambiental (DEA) 2022-426950-DEA-009138, el 30 de agosto de 2022.[7] El 12 de enero de 2023, la OGPe emitió la aprobación de la determinación de cumplimiento ambiental.[8]

Posteriormente, el 5 de abril de 2023, Mays Ochoa radicó ante la OGPe una solicitud de permiso de construcción certificado (PCOC), al que se le asignó el número 2023-485458-PCOC-034523, para la construcción de nueva infraestructura eléctrica y

---

[2] *Íd.*, pág. 45.
[3] Recurso de Revisión, pág. 4.
[4] *Íd.*; Contestación a Recurso de Revisión Administrativa, pág. 3.
[5] Apéndice del recurso de revisión, págs. 47-92.
[6] Contestación a Recurso de Revisión Administrativa, págs. 2-3.
[7] Apéndice del recurso de revisión, págs. 93-150.
[8] Contestación a Recurso de Revisión Administrativa, págs. 2-3.

la instalación de los equipos necesarios para la planta de manufactura de hipoclorito de sodio.[9]

El 16 de junio de 2023 el Tribunal Supremo en Martínez Fernández v. Oficina de Gerencia de Permisos, 2023 TSPR 75, 210 DPR ___ (2023), decretó la nulidad del Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, Reglamento Núm. 9081 de 8 de mayo de 2019 (Reglamento Conjunto de 2019), y el Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, Reglamento Núm. 9233 de 2 de diciembre de 2020 (Reglamento Conjunto de 2020). Además, pautó que la decisión de nulidad "tendrá efecto prospectivo a partir de la certificación de esta Opinión." Más adelante dictó lo siguiente:

> Las solicitudes de permisos pendientes de adjudicación y en las cuales se hayan **celebrado o señalado vista adjudicativa se podrán continuar tramitando al amparo del reglamento conjunto aplicable**. Esto aplica igualmente a aquellos permisos cuya autorización y expedición no es final y firme por ser objeto de revisión en los tribunales. Los tribunales evaluarán los recursos que se presenten a tales efectos a la luz del reglamento que la agencia haya utilizado para autorizar y expedir el permiso impugnado, si como cuestión de derecho es el aplicable.

> A partir de la certificación de esta Opinión, las nuevas solicitudes de permisos que en lo sucesivo se presenten se evaluarán según los parámetros del Reglamento Conjunto de Permisos para Obras de Construcción y Usos de Terrenos, Reglamento Núm. 7951 de 30 de noviembre de 2010. Esto será así hasta tanto la Junta de Planificación de Puerto Rico adopte un nuevo reglamento para estos fines, si así lo estima procedente dentro de sus facultades discrecionales.

Martínez Fernández v. Oficina de Gerencia de Permisos, *supra*.

---

[9] Recurso de Revisión, pág. 5; Contestación a Recurso de Revisión Administrativa, pág. 3.

El mismo día que fue certificada la opinión en <u>Martínez Fernández v. Oficina de Gerencia de Permisos</u>, *supra*, se aprobó el Reglamento Conjunto 2023 para la Evaluación y Expedición de Permisos relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, Reglamento Núm. 9473, con efectividad al 15 de julio de 2023. Este Reglamento fue adoptado mediante la Resolución Núm. JP-RP-41, de 16 de junio de 2023, por la Junta de Planificación con carácter de emergencia como resultado de la determinación emitida por el Tribunal Supremo de Puerto Rico, en <u>Martínez Fernández</u>, *supra*. El Reglamento fue firmado junto con una Certificación emitida por el Gobernador, Hon. Pedro R. Pierluisi Urrutia, proclamando un estado de emergencia.

El 20 de junio de 2023 Bella presentó una *Solicitud de intervención y oposición a otorgación de permiso*.[10] El 22 de junio de 2023 la OGPe autorizó la intervención.[11]

Así las cosas, el 29 de agosto de 2023, notificada el 31 de agosto, la OGPe emitió un primer permiso de construcción a favor de Mays, aplicando el Reglamento Conjunto de 2020.[12]

Insatisfechos, el 16 de enero de 2024, los Recurrentes presentaron una *Moción de reconsideración y/o solicitud de revisión*, en la que alegaron, entre otras cosas, que la resolución de la agencia no había sido notificada correctamente y que dicha solicitud de permiso tenía que ser evaluada a la luz del Reglamento Conjunto de 2010, porque el Reglamento de 2020 era inválido.[13]

---

[10] Apéndice del recurso de revisión, págs. 179-187.
[11] *Íd.*, págs. 188-193.
[12] *Íd.*, págs. 1-7.
[13] *Íd.*, págs. 35-42.

La agencia acogió la moción de los Recurrentes como una revisión administrativa, y el 6 de octubre de 2023 señaló una vista para el 26 de octubre del mismo año.[14]

El 18 de diciembre de 2023, la Jueza Administrativa designada emitió una resolución.[15] Concluyó que no cabía aplicar el Reglamento de 2020 porque en el caso de marras no se había celebrado vista administrativa al momento de la decisión de Martínez Fernández v. Oficina de Gerencia de Permisos, *supra*.[16] Concluyó, además, que el permiso no había sido correctamente notificado. Por tanto, el caso fue devuelto a la OGPe para subsanar deficiencias y para que se evaluara bajo el Reglamento Conjunto de 2023, adoptado bajo el procedimiento de emergencia.[17]

El 27 de diciembre de 2023 la OGPe emitió nuevamente el permiso de construcción a favor de la proponente Mays para la instalación industrial dedicada a la venta, distribución y almacenamiento de sustancias químicas. Contemplaba, además, la adición de una operación de fabricación de sustancias químicas dentro de las instalaciones. El permiso fue emitido a tenor con el Reglamento Conjunto adoptado mediante la resolución JP-4P-41 de 16 de junio de 2023.[18]

En desacuerdo, el 16 de enero de 2024, Bella solicitó reconsideración y/o solicitud de revisión.[19] En síntesis, alegó que el permiso solicitado debió ser denegado por la omisión de la parte proponente de obtener una DIA como corresponde. Adujo que la propuesta conlleva un aumento en la intensidad del uso que se le

---

[14] *Íd.*, pág. 213-217.
[15] Apéndice del recurso de revisión, pág. 18-27.
[16] *Íd.*, págs. 25-26.
[17] *Íd.*, pág. 26.
[18] *Íd.*, págs. 28-34.
[19] *Íd.*, págs. 35-165.

da a la propiedad; de ser un mero almacén de químicos, ahora proponen convertir la facilidad de Mays en una fábrica de hipoclorito de sodio. Este cambio requiere la confección de una Declaración de Impacto Ambiental ("DIA").[20]

El 25 de enero de 2024 la OGPe emitió una *Notificación no acogiendo Solicitud de Revisión Administrativa*.[21]

En desacuerdo con la determinación de OGPe, el 23 de febrero de 2024, Bella, International y Pompina presentaron el recurso que atendemos. Alegó que incidió la OGPe:

> AL NO RESOLVER QUE EL PERMISO REQUERÍA DE UNA CONSULTA DE UBICACIÓN, LA QUE NUNCA SE CELEBRÓ.
>
> AL APLICAR EL REGLAMENTO CONJUNTO DE 2023, QUE FUE ADOPTADO EN ABIERTA VIOLACIÓN AL MANDATO DEL CASO DE MARTÍNEZ FERNÁNDEZ V. OFICINA DE GERENCIA DE PERMISOS, 2023 TSPR 75.
>
> AL NO CONCLUIR QUE MAYS OCHOA ILÍCITAMENTE FRACCIONÓ EL TRÁMITE DE SUS PERMISOS, LO QUE ESTÁ PROHIBIDO POR LA REGLAMENTACIÓN AMBIENTAL APLICABLE.
>
> AL CONCEDER EL PERMISO SOLICITADO SIN LA CONFECCIÓN DE UNA DECLARACIÓN DE IMPACTO AMBIENTAL, A PESAR DE QUE EL CAMBIO PROPUESTO POR MAYS OCHOA, DE UNA OPERACIÓN DE ALMACÉN A UNA OPERACIÓN DE MANUFACTURA, CONLLEVA UN IMPACTO AMBIENTAL SUSTANCIAL.

El 21 de marzo de 2020, Mays presentó su contestación. Con el beneficio de ambas comparecencias, adjudicamos el recurso.

## II.

## A.

Es norma reiterada que los tribunales apelativos debemos conceder deferencia a las determinaciones de las agencias administrativas, por razón de la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado. Hernández Feliciano v. Municipio de Quebradillas, 211

---

[20] Apéndice del recurso de revisión, págs. 40-41.
[21] *Íd.*, pág. 166.

DPR 99 (2023); Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Estos dictámenes cuentan con una presunción de legalidad y corrección que subsiste mientras no se produzca suficiente prueba para derrotarla. OEG v. Martínez Giraud, 210 DPR 79, 89 (2022); Capó Cruz v. Junta de Planificación et al., 204 DPR 581 (2020); Torres Rivera v. Policía de PR, *supra*, pág. 626; Batista, Nobbe v. Jta. Directores, 185 DPR 206, 215 (2012).

Para así lograrlo, corresponde a la parte que las cuestiona "demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba presentada que tuvo ante su consideración." Graciani Rodríguez v. Garage Isla Verde, 202 DPR 117, 128 (2019); Camacho Torres v. AAFET, 168 DPR 66, 91 (2006).

Por tanto, la parte que impugna judicialmente las determinaciones de hechos de una agencia administrativa tiene el peso de la prueba para demostrar que estas no están basadas en el expediente o que las conclusiones a las que llegó la agencia son irrazonables. OEG v. Martínez Giraud, *supra*; OCS v. Universal, 187 DPR 164, 178-179 (2012); González Segarra v. CFSE, 188 DPR 252, 276-278 (2013). Así, pues, evidencia sustancial ha sido definida jurisprudencialmente como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. OEG v. Martínez Giraud, *supra*; Batista, Nobbe v. Jta. Directores, *supra*, pág. 216. Así, el criterio rector en estos casos siempre estará guiado por la razonabilidad de la determinación administrativa luego de considerar el expediente administrativo en su totalidad. OEG v. Martínez Giraud, *supra*.

KLRA202400094 8

En cuanto a las conclusiones de derecho estas serán revisables en todos sus aspectos por el tribunal. Véanse Sec. 4.5 de la LPAU, *supra*; Hernández Feliciano v. Municipio de Quebradillas, *supra*; ECP Incorporated v. OCS, 205 DPR 268, 281-282 (2020). Se descartará el criterio de los entes administrativos cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". Hernández Feliciano v. Municipio de Quebradillas, *supra*; Capó Cruz v. Jta. Planificación et al., *supra*, pág. 591; Rolón Martínez v. Supte. Policía, *supra*. Por ende, se ha señalado que "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". Rolón Martínez v. Supte. Policía, *supra*; Torres Rivera v. Policía de PR, *supra*, pág. 657. Aun en casos dudosos en que la interpretación de la agencia no sea la única razonable, la determinación de la agencia merece deferencia sustancial. JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177,187 (2009); De Jesús v. Depto. Servicios Sociales, 123 DPR 407, 417-418 (1989).

Para esta encomienda de la revisión judicial, la Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico", Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9675, (en adelante, LPAU) dispone que los tribunales se ceñirán a evaluar (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hecho están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si se sostienen las conclusiones de derecho realizadas por la agencia. Hernández Feliciano v. Municipio de Quebradillas, *supra*, pág. 115; Moreno Lorenzo y otros v. Depto. Fam., 207 DPR 833, 839-840 (2021); Capó Cruz v. Jta. Planificación et al., *supra*.

Así pues, la deferencia a la determinación de una agencia administrativa cederá cuando: (1) no está basada en evidencia sustancial; (2) el ente administrativo erró al aplicar o interpretar las leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó de forma arbitraria, irrazonable o ilegal, realizando determinaciones carentes de una base racional, o (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. Hernández Feliciano v. Municipio de Quebradillas, *supra*; Torres Rivera v. Policía de PR, *supra*, pág. 628.

A la luz de la mencionada normativa, evaluamos.

## III.

Los Recurrentes señalan que la OGPe incidió al aplicar el Reglamento Conjunto 2023 y, en consecuencia, resolver que el permiso requería una consulta de ubicación. Surge del tracto procesal que el 16 de junio de 2023 el Tribunal Supremo en Martínez Fernández v. Oficina de Gerencia de Permisos, *supra*, decretó la nulidad del Reglamento Conjunto de 2019 y el Reglamento Conjunto de 2020.

En Martínez Fernández, *supra*, el Tribunal Supremo determinó que las solicitudes de permisos pendientes de adjudicación y en las cuales se hayan celebrado o señalado vista adjudicativa se podrán continuar tramitando al amparo del reglamento conjunto aplicable. En el caso de marras no se había celebrado vista administrativa.

Sin embargo, el 16 de junio de 2023 también se aprobó el Reglamento Conjunto 2023. Posteriormente, y conforme a la normativa antes expuesta, el 27 de diciembre de 2023 la OGPe lo aplicó correctamente al emitir el permiso de construcción a favor

de la proponente Mays, por ser el reglamento conjunto aplicable. El permiso autorizaba la instalación industrial dedicada a la venta, distribución y almacenamiento de sustancias químicas. Contemplaba, además, la adición de una operación de fabricación de sustancias químicas dentro de las instalaciones.

Por otro lado, los Recurrentes señalan que la OGPe erró al no concluir que Mays ilícitamente fraccionó el trámite de sus permisos, y al conceder el permiso solicitado sin la confección de una declaración de impacto ambiental. Surge del expediente que Mays inició un proceso ambiental, consiguió la aprobación de la REA y la DEA, que estuvieron bajo evaluación y fueron sometidos al escrutinio de la OGPe y las agencias concernidas.

Los documentos ambientales antes mencionados discutieron en detalle la propuesta manufactura de hipoclorito de sodio, sus potenciales impactos y la medida de mitigación para evitar o reducir sus impactos.  Por tanto, el permiso de construcción emitido contemplaba la construcción de una planta de manufactura de hipoclorito de sodio, y La OGPe no requirió la declaración de impacto ambiental.

Los tribunales apelativos debemos conceder deferencia a las determinaciones de las agencias administrativas, por razón de la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado.  Consideramos que la solicitud de los Recurrentes fue resuelta adecuadamente por la agencia, quien evaluó las alegaciones de las partes.

De otro lado no hay indicio en el expediente de que la agencia haya actuado de forma irrazonable, arbitraria o ilegal.  Al aplicar las normas de revisión judicial de una decisión administrativa al caso de autos, procede concluir que el dictamen de la OGPe fue razonable y no requiere nuestra intervención.

**IV.**

Por los fundamentos ante expuestos, CONFIRMAMOS la resolución emitida por la OGPe.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones