ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| CHRISTIAN O. CINTRÓN PÉREZ, CRISTINA GUERRA CÁCERES y la Sociedad de Bienes Gananciales Compuesta por Ambos<br><br>Recurrida<br><br>v.<br><br>JUNTA DE DIRECTORES Y EL CONSEJO DE TITULARES DEL CONDOMINIO TORRE DEL CARDENAL<br><br>Recurrente | KLRA202400279 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos Del Consumidor<br><br>Caso Núm.:<br>C-SAN-2023-0015548<br><br>Sobre:<br>Ley de Condominios |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 16 de julio de 2024.

La Junta de Directores y el Consejo de Titulares del Condominio Torre del Cardenal (en conjunto, la parte recurrente) solicita la revocación de una *Resolución Sumaria* emitida el 3 de abril de 2024 por el Departamento de Asuntos del Consumidor (DACo). Mediante esta, el foro recurrido resolvió que Christian O. Cintrón Pérez, Cristina Guerra Cáceres y La Sociedad de Bienes Gananciales (en conjunto, la parte recurrida) radicó en término su querella y ordenó eliminar cualquier penalidad.

Por los fundamentos que expondremos a continuación, confirmamos la determinación recurrida.

Número Identificador

SEN2024_____

**I.**

El 16 de enero de 2023, la tesorera del Condominio Torre del Cardenal le envió un estado de cuenta con un balance de $676.73 a la parte recurrida,[1] quien respondió mediante correo electrónico con dudas sobre la factura.[2]

Luego, el 31 de enero de 2023, Torre del Cardenal emitió el *Comunicado de Tesorera 2023-02, Estados de cuentas y cobro de cuotas.* Mediante este, anunció que el titular debía actualizar sus balances o establecer un plan de pago en los próximos quince (15) días. Advirtió, además, que, a partir del 15 de febrero de 2023, comenzaría a cobrar las correspondientes penalidades por los balances en atraso.[3]

Posteriormente, el 13 de febrero de 2023, la tesorera del Condominio le envió un estado de cuenta a la parte recurrida para que corroborara el atraso.[4]

Surge del expediente que, el 13 de abril de 2023, la Junta de Directores discutió las penalidades e intereses aplicables a los titulares que tenían en atraso dos cuotas o más y no resolvieron antes del 15 de febrero de 2023.[5] El 17 de abril de 2023, Torre del Cardenal notificó a la parte recurrida las penalidades e intereses adeudadas por morosidad.[6]

El Condominio le envió a la parte recurrida un estado de cuenta con un balance adeudado de $193.63 el 11 de mayo de 2023.[7]

El 8 de junio de 2023, Torre del Cardenal le informó a la parte recurrida que no puede aceptar el cheque con fecha de 1 de

---

[1] Apéndice del Recurso, págs. 129-130.
[2] *Íd.*, pág. 131.
[3] *Íd.*, pág. 137.
[4] *Íd.*, págs. 141-144.
[5] *Íd.*, págs. 170-171.
[6] Apéndice del Recurso, pág. 174.
[7] *Íd.*, págs. 177-179.

junio de 2023, porque tiene un balance pendiente en su cuenta por un total de $540.04.[8]

En respuesta, el 13 de junio de 2023, la parte recurrida envió un correo electrónico a la administradora de Torre del Cardenal titulado "Notificación Objeción a Multa y Solicitud de Comité Conciliación Art. V). Objetó la alegada multa por pagos en atraso y solicitó que se citara un Comité de Conciliación.[9]

Después, el 3 de julio de 2023, la parte recurrida dirigió a la Junta de Directores una carta titulada "Segunda Notificación de Objeción a Multa y Solicitud de Comité de Conciliación. Apt. 605". La exhortó a aceptar sus pagos y reiteró su solicitud de que se active el Comité de Conciliación.[10]

Finalmente, el 12 de julio de 2023, la parte recurrente emitió un comunicado en respuesta al escrito del 3 de julio de 2023. Expresó que no está obligado a recibir pagos parciales al amparo de la Ley de Condominios de Puerto Rico. Alegó, además, que la nueva legislación dejó sin efecto las funciones previas del Comité de Conciliación y que el planteamiento era tardío.[11]

El 21 de julio de 2023, la parte recurrida presentó la Querella Núm. C-SAN-2023-0015548 ante el DACo.[12] El 6 de septiembre de 2023, la parte recurrida presentó una *Solicitud de Desestimación y Archivo* por falta de jurisdicción.[13]

Por otro lado, el 6 de octubre de 2023, la parte recurrida se opuso.[14] El 1 de noviembre de 2023, solicitó enmendar la Querella

---

[8] *Íd.*, págs. 180-181.
[9] *Íd.*, págs. 182-183.
[10] *Íd.*, págs. 184-185.
[11] *Íd.*, pág. 188.
[12] *Íd.*, págs. 55-72.
[13] Apéndice del Recurso, págs. 96-122.
[14]*Íd.*, págs. 192-220.

de epígrafe.[15]   Veinte días después, la parte recurrente se opuso y reiteró su solicitud de desestimación.[16]

El DACo emitió una *Notificación y Orden* donde dio por enmendada la Querella el 1 de diciembre de 2023.[17]   Insatisfecha, la parte recurrente presentó una *Moción de Reconsideración de Orden que Autoriza Enmienda a Querella y Señalamiento de Vista* el 21 de diciembre de 2023.   Argumentó que el DACo debió adjudicar la solicitud de desestimación pendiente y que, de negarse la desestimación, debió haberle concedido un plazo de treinta (30) días para presentar una alegación responsiva.[18]

El 2 de febrero de 2024, el DACo celebró una vista sobre el estado de los procedimientos.   Surgió que la *Solicitud de Desestimación y Archivo* de 6 de septiembre de 2023 no estaba en el expediente, por lo que el juez administrativo concedió quince (15) días para que las partes notificaran los escritos presentados a su correo electrónico y suplementaran.   Señaló vista para el 5 de abril de 2024, de resolverse a favor de la no desestimación.[19]

En cumplimiento, el 19 de febrero de 2024, la parte recurrente presentó una *Moción Suplementaria a Solicitud de Desestimación* y notificó los escritos previos.[20]   Al día siguiente, la parte recurrida presentó un *Escrito Suplementario*.   Alegó que existen demasiadas controversias que no se pueden resolver por la vía sumaria.[21]

El 28 de marzo de 2024, la parte recurrente reiteró la necesidad de atender los escritos dispositivos previo a la vista pautada para el 5 de abril de 2024.[22]

---

[15] *Íd.*, págs. 235-238.
[16] *Íd.*, págs. 239-245.
[17] *Íd.*, págs. 246-247.
[18] *Íd.*, págs. 248-262.
[19] Apéndice del Recurso, pág. 268.
[20] *Íd.*, págs. 271-280.
[21] *Íd.*, pág. 296.
[22] *Íd.*, págs. 306-308.

Aun así, el 3 de abril de 2024, el DACo resolvió sumariamente la Querella.[23]

En desacuerdo con la determinación del DACo, el 30 de mayo de 2024, la parte recurrente presentó el recurso que atendemos. Alegó que incidió el DACo al:

> ASUMIR JURISDICCIÓN EN UNA QUERELLA PRESENTADA TARDÍAMENTE TRAS DETERMINAR QUE EL PLAZO JURISDICCIONAL DE 30 DÍAS FUE INTERRUMPIDO Y QUE ERA PERMISIBLE CONVOCAR AL INEXISTENTE COMITÉ DE CONCILIACIÓN PARA ATENDER EL RECLAMO DEL QUERELLANTE.
>
> OBVIAR EL REQUISITO JURISDICCIONAL DE QUE EL QUERELLANTE DEBÍA TENER SU CUENTA AL DÍA, FUERA POR EL PAGO BAJO PROTESTA EN EL CONDOMINIO O POR EL MECANISMO LEGAL DE LA CONSIGNACIÓN.
>
> DIRIMIR LA PRESUNTA CONTRADICCIÓN ENTRE EL ESTADO DE 15 DE ABRIL DE 2023 Y LA NOTIFICACIÓN DE DEUDA DE 17 DE ABRIL DE 2023, SIN QUE EL CONDOMINIO RECURRENTE TUVIERA LA OPORTUNIDAD DE PRESENTAR SU ALEGACIÓN RESPONSIVA Y PRUEBA EN UNA VISTA ADMINISTRATIVA.
>
> RESOLVER EN LOS MÉRITOS LA CONTROVERSIA PRINCIPAL SIN CONSIDERAR LA TOTALIDAD DEL EXPEDIENTE. LAS DETERMINACIONES FORMULADAS SON PARCIALIZADAS Y EN CLARO MENOSPRECIO AL ALTO INTERÉS PÚBLICO QUE TIENEN LAS DEUDAS COMUNALES.
>
> RESOLVER SUMARIAMENTE QUE EL TITULAR QUERELLANTE NO TENÍA QUE PAGAR PENALIDAD ALGUNA, A PESAR DE HABER TENIDO SU CUENTA EN MORA MÁS ALLÁ DEL PERÍODO DE GRACIA CONCEDIDO POR LA JUNTA DE DIRECTORES, LO CUAL CONTRADICE EL ARTÍCULO 59 DE LA LEY DE CONDOMINIOS Y EL ALTO INTERÉS PÚBLICO QUE REVISTE A LAS DEUDAS COMUNALES.

El 8 de julio de 2024, la parte recurrida presentó su oposición. Con el beneficio de ambas comparecencias, adjudicamos el recurso.

## II.
### A.

Es norma reiterada que los tribunales apelativos debemos conceder deferencia a las determinaciones de las agencias administrativas, por razón de la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han

---

[23] *Íd.*, págs. 1-14.

delegado. Hernández Feliciano v. Municipio de Quebradillas, 211 DPR 99 (2023); Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Estos dictámenes cuentan con una presunción de legalidad y corrección que subsiste mientras no se produzca suficiente prueba para derrotarla. OEG v. Martínez Giraud, 210 DPR 79, 89 (2022); Capó Cruz v. Junta de Planificación et al., 204 DPR 581 (2020); Torres Rivera v. Policía de PR, *supra*, pág. 626; Batista, Nobbe v. Jta. Directores, 185 DPR 206, 215 (2012).

Para así lograrlo, corresponde a la parte que las cuestiona "demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba presentada que tuvo ante su consideración." Graciani Rodríguez v. Garage Isla Verde, 202 DPR 117, 128 (2019); Camacho Torres v. AAFET, 168 DPR 66, 91 (2006).

Por tanto, la parte que impugna judicialmente las determinaciones de hechos de una agencia administrativa tiene el peso de la prueba para demostrar que estas no están basadas en el expediente o que las conclusiones a las que llegó la agencia son irrazonables. OEG v. Martínez Giraud, *supra*; OCS v. Universal, 187 DPR 164, 178-179 (2012); González Segarra v. CFSE, 188 DPR 252, 276-278 (2013). Así, pues, evidencia sustancial ha sido definida jurisprudencialmente como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. OEG v. Martínez Giraud, *supra*; Batista, Nobbe v. Jta. Directores, *supra*, pág. 216. Así, el criterio rector en estos casos siempre estará guiado por la razonabilidad de la

determinación administrativa luego de considerar el expediente administrativo en su totalidad.  OEG v. Martínez Giraud, *supra*.

En cuanto a las conclusiónes de derecho estas serán revisables en todos sus aspectos por el tribunal.  Véanse Sec. 4.5 de la LPAU, *supra*; Hernández Feliciano v. Municipio de Quebradillas, *supra*; ECP Incorporated v. OCS, 205 DPR 268, 281-282 (2020).  Se descartará el criterio de los entes administrativos cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo".  Hernández Feliciano v. Municipio de Quebradillas, *supra*; Capó Cruz v. Jta. Planificación et al., *supra*, pág. 591; Rolón Martínez v. Supte. Policía, *supra*.  Por ende, se ha señalado que "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra".  Rolón Martínez v. Supte. Policía, *supra*; Torres Rivera v. Policía de PR, *supra*, pág. 657.  Aun en casos dudosos en que la interpretación de la agencia no sea la única razonable, la determinación de la agencia merece deferencia sustancial.  JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177,187 (2009); De Jesús v. Depto. Servicios Sociales, 123 DPR 407, 417-418 (1989).

Para esta encomienda de la revisión judicial, la Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico", Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9675, (en adelante, LPAU) dispone que los tribunales se ceñirán a evaluar (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hecho están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si se sostienen las conclusiones de derecho realizadas por la agencia.  Hernández Feliciano v. Municipio de Quebradillas, *supra*, pág. 115; Moreno Lorenzo y otros v. Depto.

Fam., 207 DPR 833, 839-840 (2021); Capó Cruz v. Jta. Planificación et al., *supra*.

Así pues, la deferencia a la determinación de una agencia administrativa cederá cuando: (1) no está basada en evidencia sustancial; (2) el ente administrativo erró al aplicar o interpretar las leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó de forma arbitraria, irrazonable o ilegal, realizando determinaciones carentes de una base racional, o (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. Hernández Feliciano v. Municipio de Quebradillas, *supra*; Torres Rivera v. Policía de PR, *supra*, pág. 628.

A nivel federal, los tribunales debían aplicar la deferencia cuando estuviera en controversia una interpretación de agencia administrativa, conforme a la voluntad del poder legislativo. Chevron U.S.A. v. Natural Res. Def. Council, 467 US 837 (1984). Recientemente, en Loper Bright v. Raimondo, 603 US _____ (2024) la Corte Suprema de los Estados Unidos determinó que la responsabilidad de interpretar corresponde a los tribunales.

A la luz de la mencionada normativa, evaluamos.

### III.

La parte recurrente señala que el DACo incidió al asumir jurisdicción en una querella al determinar que el plazo jurisdiccional de treinta (30) días fue interrumpido y que era permisible convocar al Comité de Conciliación. Señala, además, que incidió al obviar el requisito jurisdiccional de que la parte recurrida debía tener su cuenta al día.

Por otro lado, la parte recurrente señala que el DACo erró al dirimir la presunta contradicción entre el estado de 15 de abril de

2023 y la notificación de deuda de 17 de abril de 2023, sin que el condominio recurrente tuviera la oportunidad de presentar su alegación responsiva y prueba en una vista administrativa y al resolver en los méritos la controversia principal, sin considerar la totalidad del expediente.  No le asiste la razón.

Los tribunales apelativos debemos conceder deferencia a las determinaciones de las agencias administrativas, por razón de la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado.  Lo resuelto recientemente por la Corte Suprema de los Estados Unidos en nada incide en el caso ante nos.  Consideramos que la controversia fue resuelta adecuadamente por la agencia, quien evaluó las alegaciones de las partes.

De otro lado no hay indicio en el expediente de que la agencia haya actuado de forma irrazonable, arbitraria o ilegal.  Al aplicar las normas de revisión judicial de una decisión administrativa al caso de autos, procede concluir que el dictamen del DACo fue razonable y no requiere nuestra intervención.

**IV.**

Por los fundamentos ante expuestos, confirmamos la *Resolución Sumaria* emitida por el DACo.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones