ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| JOSÉ L. HEREDIA RODRÍGUEZ<br><br>Recurrente<br><br>v.<br><br>OFICINA DE ÉTICA GUBERNAMENTAL<br><br>Recurrido | KLRA202400559 | *REVISIÓN ADMINISTRATIVA* procedente de la Oficina de Ética Gubernamental<br><br>Caso Núm.: 20-18<br><br>Sobre: Violación a los Incisos b, g, r y s del Artículo 4.2 de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, según enmendada |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 25 de noviembre de 2024.

El presente Recurso de *Revisión Administrativa* fue presentado el 9 de noviembre de 2024 por el señor José L. Heredia Rodríguez (en adelante, el recurrente). Mediante este, nos solicita que revisemos y revoquemos una Resolución emitida por la Oficina de Ética Gubernamental (en adelante OEG o recurrida), el 9 de septiembre de 2024. En dicha *Resolución* la OEG encontró incurso en violación al Art. 4.2 de la Ley Orgánica de Ética Gubernamental, en cinco (5) infracciones a los incisos (b) y (g). Por lo tanto, le impuso una multa al recurrente de $2,000.00 por cada infracción para un total de $10,000.00.

Evaluado el recurso ante nuestra consideración y el alegato en oposición, a la luz del derecho aplicable y por los fundamentos

que explicamos a continuación, confirmamos la *Resolución* recurrida.

## I.

Los hechos que originan el caso de marras tienen su génesis en el 20 de octubre de 2017. En dicho día, aunque se encontraba la Universidad en receso académico, debido al paso del Huracán María, se convocó a una reunión extraordinaria de la Junta Administrativa de la Universidad de Puerto Rico, Recinto de Utuado (en adelante UPRU). En esta, el rector interino, aquí recurrente, convocó a algunos miembros del pleno para aprobar el presupuesto operacional del año fiscal 2017-2018. En esa misma reunión, presidida por el recurrente, la secretaria de la Junta, Edna Oquendo Laboy, advirtió que no se había constituido el quórum al no estar la representante del Senado Académico, cuya presencia es requerida para constituir el quórum, por lo tanto, se encontraban imposibilitados de realizar una reunión deliberativa y tomar decisiones o determinaciones como cuerpo colegiado. El recurrente llamó un receso para dar tiempo a la representante a que compareciera. Al reanudar la reunión extraordinaria, todavía no se había constituido el quórum, entonces, la secretaria advirtió nuevamente que no se encontraba la representante del Senado Académico. El recurrente indicó que se le había dado la oportunidad de llegar a tiempo y que la representante no había llegado a la reunión, por lo tanto, continuaba la reunión y estaban facultados para tomar decisiones. Luego de tocar el punto en agenda sobre el presupuesto y del calendario académico, el recurrente se excusó y dejó a cargo de presidir la reunión a la profesora Vivian Vélez Vera, Decana de Asuntos Académicos, como Presidenta Pro-tempore. Esta llevó a cabo un cambio en el sueldo del recurrente de no docente a

docente. Así, tras autorizarse el cambio de clasificación a docente bajo el rango de doctorado como catedrático auxiliar, se le dio una remuneración de $5,188.00, lo que correspondía a un aumento de salario de $1,943.00, mensuales al añadir a esa cantidad la bonificación de $1,979.17. En total, el salario mensual aumentó de $3,245.00 a $7,167.17.

El 25 de octubre de 2017, el Dr. Javier Lugo Pérez, quien era miembro de la Junta Administrativa de la UPRU, presentó ante dicha Junta un escrito de impugnación donde solicitó que se declarara nula la reunión extraordinaria y todos los acuerdos alcanzados en esta, por violación al Reglamento Interno de la Junta Administrativa de la UPRU, aprobado el 25 de enero de 2000, Certificación Núm. 65 1999-2000, según enmendado. Fundamentó su solicitud en que la agenda no había sido notificada dentro de los cinco (5) días previos a la reunión y que no se satisfizo el quórum reglamentario.

El 15 de diciembre de 2017, la delegación de claustrales y estudiantes envió a la oficina del Presidente de la Universidad de Puerto Rico un escrito de apelación sobre la determinación de la Junta, solicitando se declarara nula la reunión del 20 de octubre de 2017. En esta, los apelantes, miembros claustrales y estudiantiles del Senado Académico de Utuado, reiteraron los fundamentos expuestos por el Dr. Lugo Pérez en su impugnación y señalaron que resultaba éticamente inapropiado, por constituir un conflicto de interés, que el recurrente se evaluará y se concediera este aumento de rango y de salario. Señalaron también que constituyen un conflicto de intereses el que los seis (6) miembros de la Junta Administrativa que aprobaron los cambios eran empleados de confianza nombrados por el recurrente o contratados por este. Además, sostuvieron que no se

convocó al miembro estudiantil de la Junta Administrativa ni a su alterno, en contravención a lo estatuido en el Reglamento Universitario.

En mayo de 2018 se efectuó el cambio de nombramiento del recurrente de no docente a docente con efectividad de 20 de octubre de 2017. Ese cambio generó un pago retroactivo de $12,305.67. El cambio de su salario mensual aumentó de $5,224.17 a $7,167.17.

El 24 de septiembre de 2018, el oficial examinador de la apelación emitió su informe donde recomendó que se declarara nula la reunión extraordinaria, así como los acuerdos tomados en esta, incluyendo el cambio de nombramiento del recurrente y como consecuencia el aumento de salario. El recurrente ocupó el puesto de Rector Interino hasta el 14 de octubre de 2018 y el 17 de octubre de 2018 la Junta Universitaria de la UPR declaró nula la reunión extraordinaria y los acuerdos tomados en dicha reunión. La determinación se basó en que la reunión no cumplió con el quórum establecido en el Reglamento. También determinó que la Junta Administrativa de la UPRU debía realizar el proceso correspondiente para ratificar el calendario y el presupuesto. Finalmente, la UPR determinó que la cantidad total de la deuda bruta a recobrarse del recurrente era de $22,903.85, cantidad que cobró adicional por el periodo del 20 de octubre de 2017 al 14 de octubre de 2018. Actualmente, el recurrente está satisfaciendo dicha deuda mediante un plan de pago mensual a través de un descuento a su salario.

Así las cosas, el 26 de febrero de 2020 se presentó una *Querella* por parte del área de investigaciones y procedimientos administrativos de la OEG. Posteriormente, el 28 de febrero de 2020, se presentó una querella enmendada en donde se le

imputaba al recurrente violación a los incisos (b), (g), (r) y (s) del Artículo 4.2 de la Ley Orgánica de Ética Gubernamental (LOEG). Imputación de una (1) primera infracción por violación al inciso (b) del Art. 4.2 de LOEG, por entender que utilizó su deberes y facultades como servidor público para concederse un beneficio que no le es meritorio por ley e incurrir en conflicto de intereses por el mismo acto. Imputación adicional de cuatro (4) infracciones al inciso (g) por intervenir, directa o indirectamente, en un asuntos en el que tiene conflicto de intereses al (1) recesar la reunión extraordinaria en la mañana del 20 de octubre de 2017; (2) al continuar la reunión durante la tarde, aun conociendo la ausencia de la representante claustral del Senado Académico, asegurando así la discusión y aprobación de su nombramiento como empleado docente; (3) declarar *No Ha Lugar* la impugnación presentada por el doctor Perez Lugo y; (4) haber radicando una *Moción de Desestimación de la apelación* ante la Junta Universitaria, de la cual es miembro *ex officio*, para mantener el beneficio obtenido a través de la aprobación del nombramiento y consecuente aumento de sueldo aprobado en la reunión impugnada. Finalmente, imputación de otras dos infracciones a los incisos (r) y (s), por razonar que, con esa conducta, el recurrente omitió el cumplimiento de su deber impuesto por ley o reglamento, ocasionando la pérdida de fondos públicos y, llevó a cabo una acción que colocó en dudas la imparcialidad e integridad de la función gubernamental. En consecuencia, solicitó la imposición de una multa de hasta $20,000.00 por cada infracción, más la restitución de $22,903.85 cobrado en exceso.

El 17 de agosto de 2020 el recurrente presentó escrito titulado *Contestación a la Querella* en la que aceptó una gran parte de los hechos, y mantuvo su defensa en que se inhibió de

participar durante la discusión del cambio de rango y que tenía derecho al beneficio por ley. Adujo que el puesto de Rectoría es uno docente-administrativo y que, por lo tanto, su salario debía ser el de docénte con los rangos aplicables a las escalas, pues al poseer un doctorado y ser rector, su rango era el de Catedrático Auxiliar.

El 3 de septiembre de 2020 el recurrente presentó una moción de desestimación. En dicha moción el recurrente adujo que las alegaciones en la querella no justificaban la concesión de un remedio. En específico, argumentó que el beneficio al que tuvo acceso no era uno que no estuviera prohibido en ley, como establece el Art. 4.2 de la Ley de Ética Gubernamental. Añade, que no es correcto decir que, en la reunión del 20 de octubre de 2017, se aprobó un cambio de nombramiento a empleado docente, pues, él ya ocupaba el puesto de Rector el cual, a su interpretación, es uno docente según definido en el Art. 66.2.1.1 del Reglamento General.

La OEG presentó escrito en Oposición a Moción de Desestimación el 8 de septiembre de 2020. En este, arguyó que la interpretación del recurrente era errónea, toda vez que la disposición que citaba para fundamentar su solicitud no le aplicaba. Sostuvo que, la sección 66.2.1.1 se encuentra bajo el Art. 66 del Reglamento General y que, específicamente, indica que aplica a "Personal Docente con Tareas Administrativas". Por lo tanto, no le aplicaba a éste ninguna escala salarial, más allá de la compensación por ocupar el puesto administrativo. Así mismo, añadió que el Reglamento es claro en la definición de personal docente, atribuyéndole este rango al personal adscrito a una de las facultades para enseñar o investigar. A su vez, señala que existe este artículo porque en la mayoría de los casos, el personal

nombrado a estos puestos administrativos es aquel que ya tiene una plaza como docente. Al momento de ser nombrado Rector, el recurrente, ocupaba el cargo de Contador III, que es un puesto no docente. Por lo tanto, planteó que no era de aplicabilidad el aumento dentro del rango de docente que se hizo, puesto que está en violación a la Reglamentación vigente.

El 18 de mayo de 2023, OEG presentó un escrito titulado *Moción Solicitando Adjudicación Sumaria.* Mediante este, argumentó que, en su contestación a la querella, el recurrente no controvirtió los hechos materiales del caso, restando aplicar el derecho.

El 14 de agosto de 2023, el recurrente presentó Solicitud de Adjudicación Sumaria a favor del Dr. José L. Heredia Rodríguez y Oposición a la Solicitud de Adjudicación Sumaria del querellante. En resumen, mantuvo sus argumentos previamente esbozados. Insistió en que no era un beneficio prohibido por ley, sino uno al que tenía derecho como Rector. Añadió que el querellante no cumplió con el quantum probatorio y que los acuerdos en la reunión fueron declarados nulos por falta de quórum requerido, no por la existencia de conflicto ético.

Luego de varios trámites procesales que no son necesarios pormenorizar y, considerando la totalidad de los documentos, mociones y evidencia de las partes comparecientes, el 9 de septiembre del 2024, OEG emitió *Resolución* en la que adjudicó que el recurrente incurrió en cinco (5) infracciones en violación a los incisos (b) y (g) del Artículo 4.2 de la Ley de Ética Gubernamental. En consecuencia, se le impuso el recurrente una multa total de $10,000.00. Las imputaciones de infracción a los incisos (r) y (s) fueron desestimadas.

Inconforme con la determinación, el 9 de octubre de 2024, el recurrente presentó ante esta curia un Recurso de Revisión Judicial. En la misma señaló como error lo siguiente:

> Erró la oficina de ética gubernamental de Puerto Rico al concluir que el doctor Heredia Rodríguez incurrió en violación a la ley de ética gubernamental a pesar de que el beneficio económico que este recibió es uno permitido por ley.

El 6 de noviembre de 2024 la recurrida presentó su Alegato en Oposición a Revisión de Decisión Administrativa.

Con la comparecencia de ambas partes procedemos a resolver.

**II.**

**A.**

Es norma reiterada que los tribunales apelativos debemos conceder deferencia a las determinaciones de las agencias administrativas, por razón de la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado. Hernández Feliciano v. Mun. de Quebradillas, 211 DPR 99 (2023); Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Estos dictámenes cuentan con una presunción de legalidad y corrección que subsiste mientras no se produzca suficiente prueba para derrotarla. OEG v. Martínez Giraud, 210 DPR 79, 89 (2022); Capó Cruz v. Junta de Planificación et al., 204 DPR 581 (2020); Torres Rivera v. Policía de PR, *supra*, pág. 626; Batista, Nobbe v. Jta. Directores, 185 DPR 206, 215 (2012).

Para así lograrlo, corresponde a la parte que las cuestiona "demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba

presentada que tuvo ante su consideración." Graciani Rodríguez v. Garage Isla Verde, 202 DPR 117, 128 (2019); Camacho Torres v. AAFET, 168 DPR 66, 91 (2006).

Por tanto, la parte que impugna judicialmente las determinaciones de hechos de una agencia administrativa tiene el peso de la prueba para demostrar que estas no están basadas en el expediente o que las conclusiones a las que llegó la agencia son irrazonables. OEG v. Martínez Giraud, *supra*; OCS v. Universal, 187 DPR 164, 178-179 (2012); González Segarra v. CFSE, 188 DPR 252, 276-278 (2013). Así, pues, evidencia sustancial ha sido definida jurisprudencialmente como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. OEG v. Martínez Giraud, *supra*; Batista, Nobbe v. Jta. Directores, *supra*, pág. 216. Así, el criterio rector en estos casos siempre estará guiado por la razonabilidad de la determinación administrativa luego de considerar el expediente administrativo en su totalidad. OEG v. Martínez Giraud, *supra*.

En cuanto a las conclusiones de derecho, estas serán revisables en todos sus aspectos por el tribunal. Véanse Sec. 4.5 de la LPAU, *supra*; Hernández Feliciano v. Mun. de Quebradillas, *supra*; ECP Incorporated v. OCS, 205 DPR 268, 281-282 (2020). Se descartará el criterio de los entes administrativos cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". Hernández Feliciano v. Mun. de Quebradillas, *supra*; Capó Cruz v. Jta. Planificación et al., *supra*, pág. 591; Rolón Martínez v. Supte. Policía, *supra*. Por ende, se ha señalado que "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". Rolón Martínez v. Supte. Policía, *supra*; Torres Rivera v. Policía de PR, *supra*, pág. 657. Aun en

casos dudosos en que la interpretación de la agencia no sea la única razonable, la determinación de la agencia merece deferencia sustancial. JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177, 187 (2009); De Jesús v. Depto. Servicios Sociales, 123 DPR 407, 417-418 (1989).

Para esta encomienda de la revisión judicial, la Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico", Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9675, (en adelante, LPAU) dispone que los tribunales se ceñirán a evaluar (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hecho están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si se sostienen las conclusiones de derecho realizadas por la agencia. Hernández Feliciano v. Mun. de Quebradillas, *supra*, pág. 115; Moreno Lorenzo y otros v. Depto. Fam., 207 DPR 833, 839-840 (2021); Capó Cruz v. Jta. Planificación et al., *supra*.

Así pues, la deferencia a la determinación de una agencia administrativa cederá cuando: (1) no está basada en evidencia sustancial; (2) el ente administrativo erró al aplicar o interpretar las leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó de forma arbitraria, irrazonable o ilegal, realizando determinaciones carentes de una base racional, o (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. Hernández Feliciano v. Mun. de Quebradillas, *supra*; Torres Rivera v. Policía de PR, *supra*, pág. 628.

**B.**

La Asamblea Legislativa estableció la Ley Núm. 1-2012 con el propósito principal de renovar y reafirmar la función preventiva

y fiscalizadora de la OEG. Actualmente, en nuestro ordenamiento, este estatuto rige la función fiscalizadora de conducta de los servidores y exservidores públicos en Puerto Rico. Como parte de su misión, la OEG tiene la encomienda de investigar, adjudicar y penalizar a los que violentan la normativa ética que integra los valores del servicio público, mediante los mecanismos y recursos que le provee la Ley. Por su parte, el Artículo 4.2. de la Ley Orgánica de Ética Gubernamental, 3 LPRA sec. 1857a, sobre las prohibiciones éticas de carácter general establece que un servidor público no puede utilizar los deberes y las facultades de su cargo ni la propiedad o los fondos públicos para obtener, directa o indirectamente, para él o para una persona privada o negocio, cualquier beneficio que no esté permitido por ley.

Así también, en el inciso (g) del mismo artículo, establece que un servidor público no puede intervenir, directa o indirectamente, en cualquier asunto en el que él, tenga un conflicto de intereses que resulte en la obtención de un beneficio para él. Sostiene esta prohibición por el término de dos (2) años.

Veamos el texto del Artículo 4.2 (g) de la Ley de Ética Gubernamental:

"(g) Un servidor público no puede intervenir, directa o indirectamente, en cualquier asunto en el que él, tenga un conflicto de intereses que resulte en la obtención de un beneficio para él. Tampoco un servidor público puede intervenir directa o indirectamente, en cualquier asunto en el que un miembro de su unidad familiar, su pariente, su socio o una persona que comparta su residencia, tenga un conflicto de intereses que resulte en la obtención de un beneficio para cualquiera de ellos. Cuando se trate de una de las relaciones antes mencionadas, que haya terminado durante los dos años anteriores al nombramiento del servidor público, éste no podrá intervenir, directa o indirectamente, en cualquier asunto relacionado con éstos hasta pasados dos (2) años desde su nombramiento. La prohibición permanece vigente mientras exista un vínculo de beneficio para el servidor público. Una vez termine el vínculo de beneficio, el servidor público no puede intervenir, directa o indirectamente, en el referido asunto hasta pasados dos (2) años."

Dicho texto expresamente prohíbe a un servidor público, intervenir de cualquier forma, en cualquier asunto en que se evalúe un beneficio para él o para algún miembro de su unidad familiar o sea una persona con el que tenga alguna relación de amistad o comercial y que esa persona pueda recibir algún beneficio, al discutir el tema.

En el caso de OEG v. Martínez Giraud, 210 DPR 79, 2022, a las pags. 83 y 84, el Tribunal Supremo estableció que cuando se cuestione el comportamiento ético de un funcionario público, así sea la simple apariencia de imparcialidad o deshonestidad, el cargo debe quedar establecido mediante **prueba clara, robusta y convincente** que, a su vez, supere y descarte todos los planteamientos basados en conjeturas y en relatos de terceros. Dicha conclusión fue alcanzada tomando en consideración que la naturaleza del procedimiento es una acusatoria, en la que el empleado público se encuentra sujeto a ser castigado con una multa sustancial o con el despido de su empleo.

**C.**

En el Artículo 41 del Capítulo VII del Reglamento General de la UPR, se establecen las categorías y los rangos del personal docente de la institución. En las secciones de este Artículo, se define como personal docente a profesores, investigadores, especialistas o agentes agrícolas de las extensiones, bibliotecarios, trabajadores sociales y psicólogos. Esto, a su vez, se ratifica en el Art. 44.1, donde establece que ostentarán **el rango de Investigador Auxiliar o Catedrático Auxiliar aquellos contratados como Investigadores o Profesores**.

Por otro lado, en el Art. 66 del Reglamento UPR, **es aplicable al personal docente al que se le delegan tareas administrativas**. Se entiende que un docente también posee

tareas administrativas cuando, siendo docente, es nombrado a un puesto gerencial, ya sea a los niveles centrales o a nivel de facultad, escuela o colegio. Aun ejerciendo un puesto gerencial, dicho Artículo permite que, a la par con las tareas administrativas, puedan continuar desempeñando la cátedra u otras **funciones docentes** en la materia de su especialización, según estatuido en el Art. 66.1.1 del Reglamento.

En la sec. 66.2 es bastante claro en la definición de lo que son funciones gerenciales, que hace referencia, a la tarea administrativa. En esta se establece que la función gerencial tiene, a su vez, dos tipos: la docente-administrativa y la eminentemente administrativa. De esta forma, se hace una distinción entre las funciones de lo que comprende la docencia y sus rangos, y las posiciones administrativas con funciones gerenciales. Se entiende por función docente-administrativa las delegadas en personal con facultad para incidir en supervisión, evaluación, coordinación o dirección de programas de enseñanza; participación en forma directa y no incidental en la formulación de política académica a nivel de facultad, unidad institucional y sistema. Así las cosas, es sabido que los puestos con funciones docente-administrativo, tienen unos deberes y facultades alineados a la creación y cumplimiento de políticas académicas que inciden en la labor de los docentes en el salón de clases.

Las funciones docente-administrativa son las pertenecientes, según la sección 66.2.1.1, a quienes ocupen los puestos de Presidencia, Rectoría, Decanato, Decanos Auxiliares y Decanos de Asuntos Académicos, Vicepresidencia de Asuntos Académicos en Administración Central y Decanos de facultad o directores de departamentos. Este Artículo nace de la creencia de que, estos puestos, serán ocupados por personal docente. Por eso,

excluye, a los puestos de Vicepresidencia de Administración y Asuntos Estudiantiles, que no requieren de capacitación en la docencia para ser nombrado.

**III.**

El recurrente señala que OEG incidió al determinar que incurrió en violación a la ley de ética gubernamental a pesar de que el beneficio económico que este recibió es uno permitido por ley. Ello, por entender que tenía derecho por ley al beneficio del que se hizo. Por los fundamentos que expondremos a continuación, adelantamos que no le asiste la razón. Veamos.

La Universidad de Puerto Rico es una de las entidades gubernamentales más complejas que existe en nuestro país. Esta, no comprende solo la administración de once (11) unidades académicas, sino que también tiene el deber de administrar dos (2) hospitales, varias extensiones agrícolas, la isla de Magueyes y muchas otras dependencias. En ese sentido, para la reglamentación e interpretación de sus reglamentos, es necesario aplicar un método mucho más riguroso que uno puramente gramatical o lógico, para evitar recaer en silogismos que permitan conclusiones equivocadas.

Así las cosas, es menester señalar que ha sido la misma Universidad y sus administradores quienes han definido y establecido los títulos, rangos, deberes y responsabilidades de cada puesto que se requiere para la sana administración de esta compleja entidad. Por ejemplo, no debe haber dudas de que, en efecto, el puesto de Rector tiene una función gerencial tipo docente-administrativa inseparable de su posición. Por tal razón, este puesto acostumbra a ser ocupado **por personal docente capacitado y experimentado en este tipo de tareas**. Es el Rector de cada Recinto o Unidad el encargado de presidir los

cuerpos encargados de crear, supervisar y ejecutar las políticas académicas de su Recinto o Unidad.

Así, esto no significa que, por virtud de ostentar el puesto, quién lo asuma tendrá el cargo de docente de manera automática. Pues, el reglamento es bastante enfático en delinear cuales son las tareas directamente adjudicables al personal docente, sus facultades y los cargos que ocupan. Separándolos exclusivamente para aquellos que tienen labores directamente integradas con la docencia y que incluyen a los profesores, los bibliotecarios, investigadores, psicólogos y trabajadores sociales. La falsa interpretación de que corresponde cambiar el nombramiento a docente responde a que la Universidad **no visualiza en su reglamento que este puesto pueda ser ocupado por personal no docente**, tampoco lo prohíbe expresamente. En ese sentido, no existe disposición que establezca que un personal no docente que ostente el puesto de Rectoría (aun contra el uso y costumbre que rige el ordenamiento a falta de letra expresa) tenga derecho a un cambio en nombramiento como docente. Tampoco existe disposición alguna que sea aplicable en términos generales a un personal no docente que ocupe el puesto de rectoría.

Lo que si queda claro es que, para hacerse del puesto de personal docente, hace falta el nombramiento como docente con plaza, en puesto de carrera, o por contrato a tiempo parcial. Solo con los respectivos nombramientos y otorgación de rangos correspondientes, puede un **personal docente** devengar salarios conforme las escalas salariales que rigen en la UPR.

En ningún momento, el Reglamento hace alusión a que el cargo de Rector sea uno docente, mucho menos a que exista derecho a ser nombrado docente por ocupar la posición. Por el

contrario, reiteramos que, la confusión nace del hecho de que, como uso y costumbre, el puesto tradicionalmente lo ocupa personal docente y, por lo tanto, no hay disposiciones que determinen las facultades de un personal no docente que ocupa el puesto de Rector. En consecuencia, de ello, debemos señalar que el **Artículo 66 del Reglamento que cita el recurrente, de manera íntegra, hace alusión y le es aplicable al Personal Docente que asumen funciones gerenciales por virtud de sus nombramientos como administradores**. No existe espacio para interpretar, de forma alguna, que un personal no docente, aun cuando asuma un puesto gerencial, le son aplicables las disposiciones de este artículo; ni siquiera cuando parte de sus tareas puedan incluir o no, un tipo de función gerencial "docente-administrativa".

En el caso ante nos, el recurrente, al momento de los hechos, ocupaba un puesto como personal no docente, el de Contador III. Por lo tanto, no le correspondía el aumento en rango ni el cambio a nombramiento como docente, conforme el Reglamento y la Cert. Núm. 172, 2002-2003, aplicables. El recurrente, contrario a lo que establecen los reglamentos, celebró la reunión extraordinaria sin quórum, en la que delegó la tarea a personal de confianza, de nombrarle docente y hacerse de una compensación mayor a la que le correspondía según la reglamentación aplicable. Aun cuando fueron declaradas nulas, las determinaciones de dicha reunión, por periodo de un año el recurrente se hizo de $22,903.85 del erario público que no le correspondían por Ley. Por ello la Universidad le impuso un plan de pago para recobrar lo que el recurrente devengó sin que le correspondiera.

Por tal motivo, nos es forzoso concluir que OEG no incurrió en error alguno en la determinación emitida mediante Resolución el 9 de septiembre de 2024.

**IV.**

Por los fundamentos antes expuestos, confirmamos la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones